Erika MATLOCK *v.*
ARKANSAS BLUE CROSS BLUE SHIELD

CA 00-1153 49 S.W.3d 126

Court of Appeals of Arkansas
Divisions I, II, and III
Opinion delivered June 27, 2001

*Philip M. Wilson, P.A.*, for appellant.

*Walter A. Murray*, for appellee.

WENDELL L. GRIFFEN, Judge. Erika Matlock appeals a decision of the Workers' Compensation Commission that denied benefits for injuries suffered when she fell while returning to her work station at Arkansas Blue Cross Blue Shield after a trip to the restroom. Appellant argues that the Commission erroneously interpreted Act 796 of 1993 when it determined that she was not performing employment services when she was injured and, therefore, that her injury was not compensable. She also contends that the Commission's decision is not supported by substantial evidence. We hold that the Commission's finding that appellant was not performing employment services when she sustained injuries from the fall is not supported by substantial evidence, nor does the Commission's opinion display a substantial basis for denial of the relief sought. We specifically hold that the Commission erred in construing Arkansas Code Annotated section 11-9-102(4)(B)(iii) (Supp. 1999) to require a denial of benefits under the facts of this case. Thus, we reverse the Commission's decision and remand for a determination of appellant's benefits. In reaching this decision, we serve notice that our statement in *Beaver v. Benton County*, 66 Ark. App. 153, 156, 991 S.W.2d 618, 620 (1999), that "the personal-comfort doctrine is no longer the law," was *obiter dictum*. Finally, we take this opportunity to list some factors that should be instructive to the Commission, employers, workers, and their legal counsel in determining whether an employee's activity falls within the course of employment.

*Background Facts*

The parties strongly disagree on whether the Commission correctly found that appellant was not performing employment services when she fell on stairs while returning from the tenth-floor restroom to her ninth-floor workstation. However, appellant's account regarding the underlying facts is not controverted. Appellant testified that she began working for Blue Cross Blue Shield in January 1999 as an overpayment clerk. At around 9 o'clock a.m. on January 29, 1999, appellant left her desk on the ninth floor to use the restroom. The ninth-floor restroom was occupied, so she went to the restroom on the tenth floor. While returning to resume work on the ninth floor, appellant fell on the stairs and sustained a contusion to her left knee, strained her right ankle, and injured her back. The back injury was eventually diagnosed by Dr. David L. Reding, a Little Rock neurosurgeon, as a small disc rupture at L5–S1 on the right, for which Dr. Reding recommended conservative treatment. Appellant testified that she was off work for almost three months (from April 5 until July 6, 1999) for her back problem.

Appellant filed a workers' compensation claim. Her employer controverted the claim, contending that appellant was not performing employment services when the accident occurred. The record of the hearing before the Commission's Administrative Law Judge (ALJ) consists of appellant's testimony and medical exhibits. The ALJ denied the claim, and appellant appealed to the Commission. The Commission affirmed, relying on our statement in *Beaver v. Benton County, supra,* that "the personal-comfort doctrine is no longer the law." The Commission also found that "an alleged injury sustained while an employee is going to or from the bathroom, while no employment duties are being carried out, is not compensable under Act 796 of 1993." This appeal followed.

## I. Standard of Review and Relevant Legal Authority

■ ■ When a workers' compensation claim is denied, the substantial-evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for denial of the relief sought by the worker. *See McMillian v. United States Motors,* 59 Ark. App. 85, 953 S.W.2d 907 (1997); *see also Shaw v. Commercial Refrigeration,* 36 Ark. App. 76, 818 S.W.2d 589 (1991). In determining the sufficiency of the evidence to sustain the findings of the

Commission, we review the evidence in the light most favorable to the Commission's findings and affirm if they are supported by substantial evidence. *See Weldon v. Pierce Bros. Constr.*, 54 Ark. App. 344, 925 S.W.2d 179 (1996). The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; there may be substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact or heard the case *de novo. See Tyson Foods, Inc. v. Disheroon*, 26 Ark. App. 145, 761 S.W.2d 617 (1988).

## II. "Employment Services" and the "Personal Comfort" Doctrine

Our analysis begins with Arkansas Code Annotated section 11-9-102(4)(A)(i) which defines a "compensable injury" as follows:

> [a]n accidental injury causing internal or external physical harm to the body . . . arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence; . . . .

The parties apparently agree that appellant suffered an accident involving harm to her body. Their dispute centers on whether appellant's injury was one "arising out of and in the course of employment" in view of Arkansas Code Annotated section 11-9-102(4)(B), which prescribes what is *not* a "compensable injury." Specifically, the statute reads:

> (B) "Compensable injury" does not include:
>
> (iii) Injury which was inflicted upon the employee at a time when employment services were not being performed . . . .

Thus, the critical inquiry is whether appellant was performing "employment services" within the meaning of the statute when she fell while returning to her work station after using the restroom.

The "employment services" requirement was added to the Arkansas Workers' Compensation Law by Act 796 of 1993. The general rule precluding worker's compensation benefits for acts performed by employees solely for their own benefit does not apply to acts of personal convenience or comfort; in this regard, the

"personal comfort" doctrine — also sometimes referred to as the "personal convenience" exception — was developed to provide coverage when an employee is injured while taking a brief pause from labors to minister to the various life necessities such as satisfying thirst, eating, discharging bodily wastes, protecting oneself from excessive heat or cold, or cleansing oneself. Although technically the employee's actions do not contribute directly to the employer's profits, compensation is justified under the "personal comfort" exception on the rationale that the employer indirectly benefits in the form of better work from a happy and rested worker, and on the theory that such a minor deviation does not take the employee out of the employment. Under the doctrine, acts that do not conflict with specific instructions and that are normally expected for an employee to indulge in under the conditions of the work, are considered incidental to employment duties within the course of employment. *See* 1A Larson, *The Law of Workmen's Compensation*, § 21.10 (1990). *See also* 82 Am. Jur. 2d, *Workers' Compensation*, § 283.

In *Lytle v. Arkansas Trucking Services*, 54 Ark. App. 73, 923 S.W.2d 292 (1996), our court quoted Professor Larson's treatise concerning the "personal comfort" doctrine or exception as follows:

> Employees who, within the time and space limits of their employment, engage in acts which minister to personal comfort do not thereby leave the course of employment, unless the extent of the departure is so great that an intent to abandon the job temporarily may be inferred, or unless, in some jurisdictions, the method chosen is so unusual and unreasonable that the conduct cannot be considered an incident of the employment.

*Id.* at 54 Ark. App. at 79, 923 S.W.2d at 295.

The boundaries of the personal-comfort exception in Arkansas were blurred when Act 796 became effective on July 1, 1993. *See* Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996). Act 796 also contains the following declaration of legislative intent at Ark. Code Ann. § 11-9-1001:

> It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision of this act. In the future, if such things as the statute of

limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

While our opinion in *Lytle* mentioned the "personal comfort" doctrine, it did so in the context of a claim that predated Act 796 (the *Lytle* worker was a truck driver who alleged an injury sustained on July 3, 1992). However, unlike pre-Act cases, post-Act cases require a determination that the worker was injured while performing "employment services," a requirement that is unique to Arkansas.[1]

We first addressed the meaning of "employment services" in, *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996), a post-Act case involving a nurse's assistant whose job required her to care for patients in their homes. Pettey was injured in an automobile accident while en route from her employer's offices to the home of a patient. The Commission held that her accident constituted a compensable injury within the meaning of Act 796. We agreed with the Commission's reasoning that because "traveling was an inherent and necessary incident of the appellee's required employment activity, the appellee was performing employment services while en route from her employer's office to the patient's home." *Id.* at 55, 934 S.W.2d at 958. Our supreme court affirmed the decision and approved the reasoning we employed, as indicated by the following excerpt from Justice Corbin's opinion:

---

[1] A review of the laws of other jurisdictions reveals that the personal-comfort doctrine is recognized as a general rule of workers' compensation law, and acts of personal comfort and convenience are typically held as incidental to employment and compensable. For instance, New York courts recognize that an injury may be work-related even when the employee is not actively engaged in the duties of employment. *See Kaplan v. Zodiac Watch Co.*, 232 N.E.2d 625 (1967). In resolving the issue of compensability, the New York courts determine whether the injury was in any way attributable to the *environment* into which the employee was brought into by the employment. *See id.* Also, Iowa courts consider the personal-comfort doctrine as satisfying a requirement that an injury occur within the course of employment. *See Miedema v. Dial Corp.*, 551 N.W.2d 309 (1996). Once an injury is proven to occur within the course of employment, Iowa law requires that the claimant also prove that the injury arose out of the employment. *See id.*

The fact that Appellee had yet to begin her nursing duties that day does not preclude our conclusion that she was nonetheless performing employment services at the time of the accident. Whether she was being directly compensated for her travel is not pertinent to our decision, as *the facts of this case clearly demonstrate that travel was a necessary part of her employment.* Further, such travel was clearly for the benefit of Appellant, as its business livelihood depended upon the in-home care of patients provided by its nursing assistants.

328 Ark. 381, 386-87, 944 S.W.2d 524, 527 (1997) (emphasis added).

Next, we affirmed the Commission after it decided that a worker was not entitled to compensation for an injury sustained when she fell on ice in her employer's parking lot while walking from her car to begin work as a preschool day-care teacher. *See Hightower v. Newark Pub. Sch. Sys.,* 57 Ark. App. 159, 943 S.W.2d 608 (1997). Our decision in that case was premised on the going-and-coming rule which ordinarily denies compensation to an employee while he or she was traveling between home and the job based on the reasoning that employees with fixed hours and places of work are generally not considered to be in the course of their employment while traveling to and from work.

In *Harding v. City of Texarkana,* 62 Ark. App. 137, 970 S.W.2d 303 (1998), we affirmed the Commission's decision denying benefits for injuries sustained to a worker who tripped over a rolled-up carpet while walking to a designated smoking area. Our opinion cited the supreme court's decision in *Olsten Kimberly Quality Care v. Pettey, supra,* which affirmed our position that an employee performs "employment services" when the employee engages in the primary activity that he or she was hired to perform *or in incidental activities that are inherently necessary for the performance of the primary activity.* Regarding the claimant's argument that the smoking break advanced the employer's interest by allowing her to relax which, in turn, helped her to work more efficiently throughout the rest of her work shift, Judge Pittman wrote as follows:

We are not unsympathetic to this argument. Under former law, the definition of compensable injury did not include a strict requirement that the injury occur while the worker was performing employment services, and a claimant's activities at the moment of injury were relevant only to the separate and broader question of whether the injury arose out of and in the course of the employment. . . . It is clear that, under former law, appellant's injury while

en route to the break area would have been in the course of her employment pursuant to the personal-comfort doctrine. . . . It may be true that the interests of both workers and employers would be better served by a more uniform application of an administrative remedy than they would be by the uncertainty inherent in a tort claim based on premises liability. Nevertheless, the legislature, rather than the courts, is empowered to declare public policy, and whether a law is good or bad, wise or unwise, is a question for the legislature, rather than the courts. . . . In the present case, Act 796 of 1993 applies and, although appellant's break may have indirectly advanced her employer's interests, it was not inherently necessary for the performance of the job she was hired to do. Consequently, we hold that the Commission did not err in finding that appellant was not performing employment services when she was injured.

*Id.* at 138-39, 970 S.W.2d at 304 (citations omitted).

Our six-judge decision in *Beaver v. Benton County, supra,* also affirmed the Commission's finding that a worker hired as an investigator of noncustodial parents for enforcement of child-support obligations was not performing employment services when she slipped on a wet floor and fell as she was approaching the buffet during a lunch break while attending a work-related seminar at the Holiday Inn Civic Center in Fort Smith. Judge Rogers' majority opinion cited our decisions in *Hightower, supra,* and *Lytle, supra,* before adding the following statement:

However, the personal-comfort doctrine is no longer the law. Now, Act 796 of 1993 applies and, although the claimant's break may have indirectly advanced her employer's interests, it was not inherently necessary for the performance of the job she was hired to do. Consequently, we held in *Harding* that the Commission did not err in finding that appellant was not performing employment services when she was injured.

. . .

We agree with the Commission that the fact that the appellee [employer] paid for the lunches is of no moment, and it was inconsequential that appellee encouraged the group to eat together when viewed against all of the other evidence. There is substantial evidence to support a finding that appellant was not advancing her employer's interest when she was on her lunch break walking to the buffet.

*Beaver v. Benton Co.*, 66 Ark. App. 156-57, 991 S.W.2d at 620-21 (emphasis added).

In a concurring opinion in *Beaver*, Judge Bird cited our decision in *Crossett School District v. Fulton*, 65 Ark. App. 63, 984 S.W.2d 833 (1999), where we affirmed the Commission's decision awarding benefits to a claimant who fell on ice in the employer's parking lot while retrieving her reading glasses from her car. The claimant was a reading media resource teacher whose duties required her to work on three different elementary campuses under the supervision of the librarian. Shortly before the bell rang to begin the school day, she went to her assigned library. The librarian directed claimant to make some puppets for use as an instructional aid. The instructions for this project were printed in very fine print. When claimant discovered that she did not have her reading glasses, she obtained permission from her supervisor to call her husband to bring her glasses to her. Upon calling her husband, she learned that her glasses were in her automobile. After retrieving the glasses from her automobile located on the school parking lot, claimant slipped on ice and fell, breaking her leg.

We affirmed the Commission's finding that appellee was "performing employment services" when walking from her car to the building after retrieving her glasses. Judge Crabtree set forth the following reasoning for our decision:

> Arkansas Code Annotated section 11-9-102(5)(B)(iii) states that compensable injury does not include an "injury which was inflicted upon the employee at a time when employment services were not being performed. . . ." The question before this court is whether retrieving reading glasses required to complete a duty of employment is an employment service.
>
> The appellant relies on *Hightower v. Newark Public Sch. Sys.*, 57 Ark. App. 159, 943 S.W.2d 608 (1997), in which a day care worker slipped in the parking lot on her way to report to work. That case is distinguishable in that the claimant in *Hightower* was injured before she began her employment services that day. In this case, the appellee had reported to work, had supervised children before the bell rang beginning school, was given an assignment after reporting to the librarian, and injured herself in efforts taken to complete the assignment. Those facts constitute substantial evidence that appellee was performing employment services at the time of her injury.

*Id.* at 65-66, 984 S.W.2d at 834.

Judge Bird's concurring opinion in *Beaver, supra*, also cited our decision in *Fisher v. Poole Truck Line*, 57 Ark. App. 268, 944 S.W.2d 853 (1997). In that case we reversed the Commission's decision denying benefits, and held that a truck driver who was injured in an automobile accident while transporting the results of a mandatory urine test was performing employment services. Citing *Crossett Sch. Dist. v. Fulton, supra*, and *Fisher v. Poole Truck Line, supra*, Judge Bird emphasized that the employees in those cases were not "performing his or her assigned work tasks at the time of the injuries, yet the injuries were found to be compensable." *Beaver*, 66 Ark. App. at 158, 991 S.W.2d at 721 (Bird, J., concurring).

We affirmed the Commission's decision to deny benefits in *Coble v. Modern Bus. Sys.*, 62 Ark. App. 26, 966 S.W.2d 938 (1998). That case involved a corporate trainer whose job required her to travel to branch locations throughout the company. While on assignment in Peoria, Illinois, the trainer decided to locate a shopping mall on her lunch break to purchase a pair of pantyhose because the pair she was wearing had developed a noticeable run. Upon arriving at the mall, the trainer noticed that she lacked time to complete her purchase and attempted to return to the office. While trying to turn around on a highway, the trainer's vehicle was struck by a motor home, leaving her with multiple injuries, including a head injury that rendered her unable to work. Her employer contended that her claim was not compensable. The Commission agreed and denied benefits after finding that the trainer was not performing "employment services" at the time the accident occurred. In affirming that decision, then Chief Judge Robbins wrote:

> In the instant case, there was evidence that Ms. Coble was not required to replace hosiery during the workday in the event of a run, nor was she even expected to do so. In addition, she admitted that she would not have made the trip if her trainee had not requested a lunch break; she was prepared to continue the training despite the condition of her pantyhose. On her break from work, she was free to do whatever she wanted to do, and it was solely her decision to proceed to the mall. Under these circumstances, we agree that her decision to drive to the mall was personal in nature, was not a requirement or essential component of the services she provided, and did not constitute "employment services" for purposes of the new Act.

*Id.* at 31-32, 966 S.W.2d at 941.

However, we reversed the Commission and remanded for benefits in *Shults v. Pulaski County Sp. Sch. Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998). The worker in that case was a building custodian at an elementary school in Jacksonville, Arkansas, who fell while entering the building at the start of the workday, resulting in a fractured right knee cap. One of the worker's duties upon arriving at work was to disarm the building security system. He fell while running into the building after observing that the alarm system had already been disarmed. The Commission denied benefits, reasoning that merely entering onto the premises of one's employer was not sufficient to bring one within the employment services provision of Act 796. Judge Meads addressed that reasoning as follows:

> Although that is a correct statement of the law, we disagree that appellant was "merely entering upon" the employer's premises. Upon appellant's arrival at Tolleson Elementary School, his first duty as building custodian was to check the alarm system. We believe this duty was an activity that carried out the employer's purpose or advanced the employer's interests, and therefore constitutes employment services. Whether or not the alarm system had already been disarmed on the day of appellant's accident is not dispositive, because appellant did not know this until he stepped into the building to check the system for himself. Therefore, we find that appellant did sustain a compensable injury because he sustained an injury to his knee at a time when employment services were being performed.

*Id.*, at 173-74, 976 S.W.2d at 401.

We also reversed the Commission and remanded for an award of benefits in *Ray v. University of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999). There we held that a food-service worker was performing employment services when she suffered a fall during a paid break. The Commission denied benefits based on its view that the worker was not performing employment services because she was reaching for an apple to personally consume, and was not assisting student diners, or "otherwise benefitting the employer," when she slipped and fell. We held that decision to be without a substantial basis, stating as follows:

> We hold that appellant was performing employment services at the time she was injured based on the fact that *appellant was paid for her fifteen-minute breaks and was required to assist student diners if the need arose. Appellant's employer gleaned benefit from appellant being present and required to aid students on her break.* . . . Unlike the employer in

> *Harding*, the University of Arkansas required Ray to be available to work during her break and paid her for the time she was on break, presumably because she was required to help students. The University of Arkansas was clearly benefitted by Ray's being in the cafeteria and available for students during her paid break. The benefit was not tangential as in *Harding*, but was directly related to the job that Ray performed and for which she was paid. In distinguishing *Harding*, we specifically note that, unlike the break in *Harding*, the appellee employer in this case furnished food for its resting employees and paid them for the break to induce them to be available to serve students even during the break period.

*Id.* at 180-81, 990 S.W.2d at 560-61 (emphasis added).

Finally, the supreme court reversed and remanded our decision affirming the Commission's denial of benefits in *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). White was a forklift driver whose duties primarily consisted of continually loading four veneer dryers with lumber. While on his way to smoke a cigarette during a work break, he slipped and fell on a step covered with algae as he attempted to step through a door located in front of a dryer. The Commission denied benefits after finding that White failed to prove that he was performing employment services at the time of his injury. We affirmed, holding that there was a substantial basis for the Commission's decision to deny benefits on the finding that the worker was not performing employment services at the time of his injury and that the injury was not compensable under the personal-comfort doctrine.

On review by the Arkansas Supreme Court, the employer repeated its argument that the accident occurred when no employment services were being performed. Writing for a unanimous court, Justice Corbin addressed the employer's position as follows:

> In the present matter, Georgia-Pacific argues that White was on a personal break and not performing any employment services; thus, his injury is not compensable. This argument ignores the fact that someone had to monitor the dryers, whether it be White or a relief worker. Because there was no relief worker provided, White was forced to remain near his immediate work area in order to monitor those machines. If one of the dryers needed to be loaded or his supervisor needed him for some reason, White would have been forced to return to his forklift immediately. Georgia-Pacific's argument also ignores the fact that White's supervisor instructed him to take a break "when he could."

We believe the present situation is analogous to the facts presented in *Ray*, 66 Ark. App. 177, 990 S.W.2d 558. In *Ray*, appellant was . . . entitled to two unpaid thirty-minute breaks and two paid fifteen-minute breaks each day. During one of her paid breaks, appellant slipped and fell as she was getting a snack from the cafeteria for her own personal consumption. The Commission denied appellant's claim for disability benefits after determining that she was not performing employment services at the time of her injury. The court of appeals reversed the Commission's decision, noting that White was paid for her fifteen-minute breaks and was required to assist student diners if the need arose. Based on those facts, the court of appeals held that the employer gleaned benefit from appellant being present and required to aid students on her break. *Likewise, in this matter Georgia-Pacific also gleaned benefit from White remaining near his work station in order to monitor the progress of the dryers and immediately return to work if necessary.*

. . .

*While it is true that White was not loading the dryers at these times, he was in fact monitoring them, which was a required part of his job duties. White testified that it was necessary to watch the dryers and load them as the need to do so arose. It was this fact that necessitated the presence of a relief worker. Due to the fact that Georgia-Pacific failed to provide such relief staff, it was necessary for White to monitor the dryers, even it was time for one of his breaks.*

*Id.*, at 479-80, 6 S.W.3d at 100-02 (emphasis added).

### III. Principles Emerging From "Employment Services" Decisions and the Dictum in Beaver v. Benton County

■ Our review of appellate decisions applying the "employment services" requirement of Act 796 demonstrates several principles. First, while the "personal comfort" or "personal convenience" cases involve disputes regarding whether the workers were performing "employment services" when their accidents occurred, the "employment services" requirement prescribed by Act 796 simply reflects the broader requirement that an accident must occur in the course of employment to be compensable. This involves deciding whether the accident occurred "within the time and space boundaries of the employment, when the employee is carrying out the

employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.*, 339 Ark. at 478, 6 S.W.3d at 100 (quoting *Olsten v. Kimberly Quality Care v. Pettey, supra.*)

■ Second, although it is true that "personal comfort" or "personal convenience" cases raise the "employment services" question, our court and the supreme court have held that workers are entitled to compensation benefits based on injuries from accidents that occurred when they are not performing actual job tasks, *see Ray v. University of Arkansas, supra*; *Crossett School District v. Fulton, supra*, and even when the accident occurred away from the employer's premises, *see Fisher v. Poole Truck Line, supra*. The fact that a worker is injured while attempting to satisfy a personal need is not, *per se*, dispositive regarding whether she was performing employment services when the accident occurred. *See Ray v. University of Arkansas, supra*. Similarly, the fact that a worker is not directly compensated for the activity engaged in when an accident occurs for which workers' compensation benefits are sought is not controlling as to whether the worker was performing employment services. *See Olsten Kimberly Quality Care v. Pettey, supra*. On the other hand, merely walking to and from one's car, even on the employer's premises, does not automatically constitute performing employment services. *See Hightower v. Newark Pub. Sch. Sys., supra*. In other words, whether a worker performs employment services and sustains an accident within the course of employment is a factual question which is to be resolved based upon the circumstances of each case, not on blanket notions of "personal comfort" or "personal convenience."

■■ The decisions on the employment services question also compel us to acknowledge that the statement in *Beaver v. Benton County, supra*, "the personal-comfort doctrine is no longer the law," was unnecessary to our decision in that case. It is certainly understandable that the Commission quoted our statement; after all, it is part of the opinion in *Beaver*. Yet, as previously mentioned, the controlling inquiry is not whether an injury occurred while the worker was engaged in personal-comfort activity, *per se*. Thus, it is not conclusive that the accident occurred while the worker was returning from a personal errand to obtain reading glasses, going to get an apple to consume while on an authorized work break, or going to smoke. Rather, the critical inquiry is whether the activity advances the employer's interest.

*IV. Factors Relevant to Determining
the Employment Services Question*

█ Whether a worker was performing employment services within the course of employment depends on the particular facts and circumstances of each case. The controlling test has not changed since our decision in *Olsten Kimberly Quality Care v. Pettey, supra* (stating the inquiry as whether the employee is "engaged in the primary activity that [s]he was hired to perform *or in incidental activities that are inherently necessary for the performance of the primary activity.*") The difficulty arises from the fact that Act 796 does not define factors to guide employers, workers, their legal counsel, and the Commission in determining what constitutes "employment services." That omission by the General Assembly may well have been intentional. After all, given the vagaries of industries, work settings, working conditions, and workers, any blanket definition would be either so imprecise as to be meaningless or unworkably rigid and narrow. Whatever "employment services" means must be determined within the context of individual cases, employments, and working relationships, not generalizations made devoid of practical working conditions.

█ Our decisions show that no single feature of the employment relationship is determinative of whether conduct falls within the meaning of "employment services." However, the factors that may be relevant in reaching that determination include:

1. Whether the accident occurs at a time, place, or under circumstances that facilitate or advance the employer's interests (*Shults v. Pulaski Cty. Sp. Sch. Dist.*; *Fisher v. Poole Truck Line*);

2. Whether the accident occurs when the employee is engaged in activity necessarily required in order to perform work (*Olsten Kimberly Quality Care v. Pettey*);

3. Whether the activity engaged in when the accident occurs is an expected part of the employment (*Shults v. Pulaski Cty. Sp. Sch. Dist.*);

4. Whether the activity constitutes an interruption or departure, known by or permitted by the employer, either temporally or spatially, from work activities (*White v. Georgia-Pacific Corp.*);

5. Whether the employee is compensated during the time that the activity occurs (*Ray v. University of Arkansas*);

6. Whether the employer expects the worker to cease or return from permitted non-work activity in order to advance some employment objective (*Ray v. University of Arkansas*).

As we said in *Franklin v. Arkansas Kraft, Inc.,* 5 Ark. App. 264, 270, 635 S.W.2d 286, 289 (1982), regarding the factors bearing on whether one is an independent contractor or an employee for purposes of determining workers' compensation coverage, "[t]hese are not all the factors which may conceivably be considered in a given case, and it may not be necessary in some cases for the Commission to consider all of these factors." 5 Ark. App 270, 635 S.W.2d 289. In some cases these and other factors will weigh more heavily than in others. It is the Commission's responsibility as trier of fact to determine whether and to what degree these or other factors demonstrate that the accident occurred when the employee was engaged in the primary activity that he or she was hired to perform or in incidental activities inherently necessary for the performance of the primary activity. On appellate review, our duty will be to determine whether the Commission's decision in a given case is supported by substantial evidence.

In setting forth these factors for analyzing disputed claims about whether employment services were performed, we are not engaging in judicial legislation in contravention of the legislative intent expressed at Ark. Code Ann. § 11-9-1001. We are neither liberalizing nor narrowing the meaning of "employment services." Our task is to review the record to determine whether substantial evidence exists to support the Commission's findings on that subject. But those findings must turn on facts and factors germane to the course-of-employment question. They cannot and should not be made in the abstract. It is patently improper to summarily pronounce that all claims involving "personal comfort" or "personal convenience" accidents are outside the course of employment and, therefore, are noncompensable without regard for the underlying facts. By the same logic, it is improper to hold that all personal-comfort or personal-convenience accidents are within the course of employment and are compensable, no matter what the facts in individual cases may be. By now, it should be common knowledge that determining the relevant factors for finding the facts in disputed cases is a singularly judicial function rather than legislation.

When we apply the factors set forth above to the case at hand, we are compelled to hold that the Commission erred in concluding that appellant was not performing employment services when she fell on the stairs of the employer's office building while returning to resume work for the employer after going to the restroom. The fact that Matlock was not performing a job task when she fell, while forcefully argued by the appellee and emphasized by the Commission in its opinion, is not controlling on whether she was within the course of the employment when she fell. Just as the teacher in *Fulton* was not performing a job task when she fell on ice while returning to resume work after retrieving her reading glasses from her automobile in the employer's parking lot, Matlock was not performing a job task when she fell while returning to resume work after going to the restroom.

Nevertheless, Matlock was manifestly advancing the employer's interest by returning to work after an authorized or permitted rest period. She had gone to a restroom provided by the employer on her floor, found it occupied, proceeded to another restroom provided by the employer on a nearby floor, and was returning to resume the employer's work when the accident occurred that resulted in her injuries. Her conduct in returning to her desk was entirely consistent with the employer's interest in advancing the work. Nothing about that conduct suggests an attempt to deviate from the employment, whether temporally (as in the duration of her stay in the restroom) or spatially (as in the proximity or remoteness in distance between appellant's fall and her work station). There is no fact that even remotely supports an inference, let alone a factual finding or conclusion of law, that appellant was violating or undermining any interest of the employer by going to the restroom or by returning to her work station. Everything in the record before us indicates that Matlock was engaged in conduct permitted by the employer, if not specifically authorized by the employer, and that the employer provided restroom facilities on its premises.

We should not forget as judges what we know as intelligent humans. Restroom facilities are provided in work settings because eliminating bodily toxins and wastes are natural and ordinary biological processes. Employers provide restroom facilities for the benefit of their customers, to be sure. But they also provide those facilities to accommodate their workers so as to avoid the work interruptions and delays that would certainly occur if workers were forced to leave the employment premises in order to find a public restroom at some distance from the work, their supervisors, and

customers. The strict-construction requirement of Act 796 does not obligate the Commission and courts to ignore biology, anatomy, or human physiology. Nor does it require that we review workers' compensation claims and appeals as simply a matter of determining whether the worker was performing a job task when the accident occurred.

We are also guided by Justice Corbin's observation in *White v. Georgia-Pacific Corp.* concerning the lack of evidence to support the Commission's decision. Justice Corbin wrote:

> We cannot ignore the fact that what seems to be lacking the most in this case is the type of substantial evidence needed to support the Commission's decision.

> This court has previously addressed the issue of what constitutes substantial evidence in the context of a workers' compensation case. In *Pickens-Bond Constr. Co. v. Case*, 266 Ark. 323, 584 S.W.2d 21 (1979), this court stated:

>> *Substantial evidence has been defined as "evidence that is of sufficient force and character that it will, with reasonable and material certainty and precision, compel a conclusion one way or the other. It must force or induce the mind to pass beyond a suspicion or conjecture."* Ford on Evidence, Vol. 4, § 549, page 2760. Substantial evidence has also been defined as "evidence furnishing a substantial basis of fact from which the fact in issue can reasonably be inferred; and *the test is not satisfied by evidence which merely creates a suspicion or which amounts to no more than a scintilla or which gives equal support to inconsistent inferences."*

*Id.* at 479–80, 6 S.W.3d at 101 (emphasis added, citations omitted) (quoting *Aluminum Co. of America v. McClendon*, 259 Ark. 675, 535 S.W.2d 832 (1976)).

In *White*, the supreme court mentioned that the employer presented no evidence to rebut the worker's testimony on several critical points. In this case, the employer presented no testimony to rebut appellant's testimony that (1) that she left her work to go to the restroom on the ninth floor about 9 o'clock a.m.; (2) that the restroom was occupied on the ninth floor; (3) that she went to the tenth floor to use the restroom; (4) that she slipped and fell on the stairs while returning from the tenth floor; (5) that there was no policy regarding whether and when she could or could not go to the restroom; (6) that she fell while "coming back to my work

station"; and (7) that she reported her accident to her unit leader when she returned to her desk ("because my supervisor was not there yet, and she told me she thought that I should tell him and then fill out a form, an accident form"). There is nothing in the record to suggest that appellant's restroom break was unauthorized, was taken for a purpose forbidden by the employer or contrary to the employer's interests, or that it was a sham or pretext for what was really a deviation or departure from the employment.

 The strict-construction mandate of Act 796 and the requirement that we view the evidence in a light most favorable to the Commission's decision and uphold that decision if it is supported by a substantial basis for denying relief do not change the requirement that the Workers' Compensation Commission must have, in fact, a substantial basis for denying a claim for benefits. As the supreme court stated when it reversed our decision affirming the Commission's denial of benefits in *Georgia-Pacific Corp., supra*, the substantial-evidence test "is not satisfied by evidence which merely creates a suspicion . . . ." Based on the record in this case, we cannot say that there is substantial evidence supporting the Commission's decision. The Commission's opinion does not display a substantial basis for the denial of relief merely on the strength of a "finding" that an alleged injury sustained while an employee is going to or from a bathroom, while no employment duties are being carried out, is not compensable under Act 796 of 1993.

 The rule of strict construction is not the enemy of common sense and does not require a literal interpretation leading to absurd consequences; such a reading should be discarded in favor of a more reasonable interpretation. *Aeroquip, Inc. v. Tilley*, 59 Ark. App. 163, 954 S.W.2d 305 (1997). This is especially true when the Commission's "finding" derived from such a literal interpretation has no evidentiary basis. Accordingly, we reverse the Commission's decision that appellant was not performing employment services when she fell while returning to her work station from the employer's restroom. The case is remanded to the Commission for determination of benefits.

HART, BIRD, NEAL, CRABTREE, and BAKER, JJ., agree.

ROBBINS, VAUGHT, and ROAF, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. The real issue on appeal sometimes becomes obscured by all the rhetoric. The sole dispositive issue in this case is whether, under our present

employee-unfriendly workers' compensation law, an employee is performing employment services, *i.e., performing a service for her employer,* when she is going to the toilet. *See* Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 1999). The majority holds that she is, and in doing so, violates the legislative mandate of Ark. Code Ann. § 11-9-704(c)(3) by applying a strained, liberal construction to this law.

ROAF, J., joins in this opinion.

LARRY D. VAUGHT, Judge, dissenting. While the decision reached by the majority in this case appears to be fair and just, I dissent because I believe that it is not supported by Act 796 of 1993 and the parameters established by the legislature and prior decisions of this court and the supreme court. This court has struggled with this case and two others currently under submission concerning the same issue. The majority in each case has reached the conclusion that I have sought and hoped for, but have failed to reach.

There is not one judge, or any reasonable person, who would not believe that the law *should* provide workers' compensation coverage for Ms. Matlock when she was injured after leaving her desk during regular work hours to use the restroom. As discussed by the majority, under prior Arkansas law personal comforts were an integral part of the work day and were covered routinely as necessary adjuncts to the work experience. Other jurisdictions universally recognize them and provide coverage. However, by Act 796 of 1993, the Arkansas General Assembly made a conscious decision to limit the rights of employees and to limit the liabilities of employers. Today this court begins to reverse that direction. I applaud my colleagues' activism and agree wholeheartedly in the result, but I conclude that the court has usurped the legislative function.

When our General Assembly enacted Act 796 of 1993, it issued the following "Legislative Declaration," codified at Ark. Code Ann. § 11-9-1001 (Repl. 1996):

> It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision of this act. In the future, if such things as the statute of limitation, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by

the law, or scope of the workers' compensation statutes need to be liberalized, broadened or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Act 796 excludes from the definition of "compensable injury" any injury sustained by an employee at a time when he is not performing employment services. Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 1999). Further, this section, as all of Act 796, must be strictly construed. Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996).

After recognizing these edicts, the majority concludes that the boundaries of the personal-comfort doctrine have been blurred by Act 796. However, I conclude that instead of blurring the boundaries, Act 796 made the boundaries rigidly clear. In order for a worker to be eligible for workers' compensation benefits, the injury must be sustained in the course of employment, while the employee is performing employment services. The test for determining whether an employee was acting within the "course of employment" at the time of injury requires that the injury occur within the time and space boundaries of the employment, when the employee is carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997).

Appellant's trip to the restroom bears similarity to other types of personal comforts that have been subject to appellate review under the current Workers' Compensation Act. These cases are discussed at length in the majority opinion, and are the basis for the majority's conclusion that the court's assertion in *Beaver v. Benton County Child Support Unit,* 66 Ark. App. 153, 156, 991 S.W.2d 618, 620, that the "personal comfort doctrine is no longer the law" is merely dicta.

In *Beaver*, this court upheld the Workers' Compensation Commission's decision that an injury suffered by an employee while she was on a lunch break during an out-of-town training seminar was not compensable because she was not performing employment services at the time she was injured. Judy Beaver worked as an investigator charged with enforcement of child-support orders for the Benton County Child Support Unit. In April 1997, she was attending a work-related software-training seminar in Fort Smith, Arkansas. During a lunch break, Beaver slipped while approaching a

buffet line and fell to one knee. She ultimately sought treatment for her injury and was diagnosed with a lumbar disk herniation.

The Commission denied Beaver's claim for benefits. In reaching its decision, the Commission found that since Beaver was on a lunch break and not performing any work-related activity within her job description, she was not acting for the benefit of her employer. The Commission noted that for an injury to be compensable, by law, it must occur while the employee is acting in the course of her employment.

This court upheld the ruling of the Commission, finding that there was substantial evidence showing that at the time of the injury Beaver was not engaged in an activity that advanced her employer's interests. This court based its finding on the fact that she was injured while on a lunch break where attendance was not mandated and where the time was uncompensated. This court agreed with the Commission's ruling that for an injury to be compensable, it must have occurred at a time when the employee was performing employment services.

I agree with the majority that the blanket pronouncement in *Beaver* of the death of the personal-comfort doctrine is too simplistic and was unnecessary for the court's analysis. I also agree that the question of whether a worker performs employment services and sustains an accident within the course of employment are factual questions which are to be resolved based on the circumstances of each case. However, I am persuaded that this court concluded that Ms. Beaver's employer was receiving no direct or indirect benefit from her time at lunch, even though her employer encouraged her to attend the luncheon.

Based on the controlling workers' compensation law, my understanding of appropriate judicial authority, and the standard of review that this court is required to apply to a decision of the Workers' Compensation Commission, I believe that the facts of appellant's case support the Commission's conclusion that she was not performing employment services at the time of the accident. In reaching this conclusion, I am especially persuaded by the four cases discussed at length by the majority. *See White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999); *Olsten Kimberly Quality Care, supra; Ray v. University of Arkansas,* 66 Ark. App. 177, 990 S.W.2d 558 (1999); and *Crossett School District v. Fulton,* 65 Ark. App. 63, 984 S.W.2d 833 (1999).

The majority opinion relies heavily on *Olsten Kimberly Quality Care*, which gives the only clue to the definition of "employment services." In *Olsten Kimberly Quality Care*, the claimant, Cheri Pettey, was a nursing assistant who was required to travel to each patient's home to provide nursing services. She was injured in an automobile accident between the office of her employer and the home of her first patient of the day. The Commission awarded her benefits while noting that the definition of compensable injury excludes any injuries sustained when "employment services" are not being performed. *See* Ark. Code Ann. § 11-9-102 (5)(B)(iii). Because "employment services" are not defined in the statute, the Commission crafted the following guideline:

> an employee is performing employment services when she is engaging in an activity which carries out the employer's purpose or advances the employer's interests. Obviously, an employee carries out the employer's purpose or advances the employer's interests when she engages in the primary activity which she was hired to perform. However an employee also carries out the employer's purpose or advances the employer's interests when she engages in incidental activities which are inherently necessary for the performance of the primary activity.

*Olsten Kimberly Quality Care, supra* at 384, S.W.2d at 526. However, the Commission applied this guideline to Ms. Pettey's claim by holding that "employees are performing employment services when they are engaged in travel which is an inherent and necessary incident of a required employment activity." Finally, the supreme court, quoting from this court, reasoned that "[i]t is likewise clear that delivering nursing services to patients at their homes is the *raison d'etre* of the appellant's business, and that traveling to patients' homes is an essential component of that service." *Id.* at 384, S.W.2d at 526.

The principles of the employment-services analysis set forth in *Olsten Kimberly Quality Care* have been applied in other cases considered on appeal. In *White, supra,* because the claimant was required to keep an eye on his work, was not given any relief help, and was told to take a break when he was able to, the supreme court overruled this court and found that the claimant had not left his work and was not on a personal break when he was injured while stopping to smoke a cigarette. Similarly, in *Ray, supra,* this court held that in order to be compensable, claimant's injury must have occurred while the claimant was "performing employment services." In that case, the claimant was injured in a slip-and-fall

accident as she attempted to get a food item for her own consumption during a paid break. Ms. Ray was not only paid for the break time, she was subject to having the break interrupted if a student needed assistance. Those facts were a sufficient basis for concluding that the claimant was performing employment services at the time of the injury. Finally, in *Fulton, supra,* this court affirmed the Commission's decision awarding benefits to a claimant who fell on ice in the employer's parking lot while retrieving her reading glasses from her car. The claimant was a reading-media resources teacher who had, only moments before the accident, been assigned to read instructions that were in very fine print, and she was unable to perform this job function without the assistance of reading glasses, which were located in her car.

The connecting thread between *Olsten, White, Ray, and Fulton* is the direct nexus between the incidental activity and the job. Employment services may include incidental activities only if they are inherently necessary for the performance of the primary employment activity. In the instant case, there is not a sufficient nexus between Matlock's job and her trip from the restroom. Whether or not an employee is performing employment services is a factual determination to be made by the Commission. We cannot reverse if there is substantial evidence to support that finding.

I am mindful of the argument that necessary bodily functions require attention and are not under the voluntary control of the employee. It would certainly be unlawful to deny restroom breaks for employees, but that is not a workers' compensation issue. The only issue is whether the employee was providing employment services at the time of the injury. What is necessary for the employee is not necessarily advancing the employer's interests directly or indirectly.

Today's decision, for the first time, shifts the emphasis from the employer's interest to the employee's necessity. That may be progressive. It is certainly compassionate. But workers' compensation claimants cannot rely on this court to always make the compassionate call. The Arkansas General Assembly has retained the authority to make workers' compensation law. It has the ability to protect workers from the harsh results that I believe are mandated by the present statutory scheme.

The standard of review in workers' compensation cases is clear. The legislative history and intent of Act 796 are equally clear. *Olsten, White, Ray,* and *Fulton* bear important distinctions from the

facts of this case. While the majority result may seem more palatable, it is an inappropriate erosion of well-settled law and an improper intrusion into the province of the legislature. Act 796 was a response, at least in part, to perceived judicial activism. I am concerned for the workers' compensation claimant that decisions such as the majority opinion in this case may result in a legislative response that makes a claimant's burden even more difficult.

It is my opinion that the decision of the Commission is supported by substantial evidence. Accordingly, I would affirm.

I am authorized to state that Judge ROBBINS joins in this dissent.