Wendy A. COLLINS v. EXCEL SPECIALTY PRODUCTS

CA 01-102                                        49 S.W.3d 161

Court of Appeals of Arkansas
Divisions I, II, and IV
Opinion delivered July 5, 2001

*Stephen M. Sharum*, for appellant.

*Hardin, Jesson & Terry, PLC*, by: *J. Rodney Mills* and *J. Leslie Evitts, III*, for appellee.

OLLY NEAL, Judge. Appellant, Wendy Collins, appeals from the decision of the Workers' Compensation Commission, (hereinafter Commission) denying appellant's claim. The Commission adopted the administrative law judge's decision finding that appellant was not performing employment services at the time of her injury. We reverse and remand this case to the Commission for further consideration of appellant's claim in light of our decision last week in *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001).

Appellant was employed with appellee, Excel Specialty Products, as a production worker. Her job consisted of carving blocks of beef into beef steaks of sizes by weight as specified by her employer. Her production work included incentive pay for a certain production quota and the employees on her production line were required to clock in and out on a time clock. Appellant and her co-workers were given fifteen-minute breaks in the morning and in the afternoon and a thirty-minute lunch break.

On November 2, 1999, sometime between the morning break and the lunch break, appellant left the production line to go to the bathroom for the purpose of urination. Between the production line and the restroom, appellant suffered a fall sustaining a fracture to her right wrist and arm. This fall and resultant injury occurred while appellant remained "on the clock."

The Administrative Law Judge denied appellant's claim reasoning as follows:

> In the present case, the circumstances surrounding the claimant's alleged injury are not in dispute. The claimant testified that the respondent allowed employees to leave the line and go to the restroom whenever necessary and without "clocking out." She stated that the alleged accident and injury occurred after she had left her work station and while she was actually on her way to the restroom to relieve herself.

> Clearly, at the time of her alleged accident and injury, the claimant was not engaged in the performance of any employment tasks which she had been specifically assigned by her employer, nor was she engaged in any activity which would directly benefit or advance the interests of her employer. Nor would her actions be considered inherently necessary for the performance of her required tasks. At most, her actions would only indirectly benefit her employer. Under the Court's ruling in *Harding v. City of Texarkana*, 62 Ark. App. 137, 970 S.W.2d 303 (1998), this is not sufficient to cause the activity to be considered "employment services."

> Based upon existing precedent, I am compelled to find that the claimant's alleged accident and injuries occurred at a time when she was not performing "employment services" as required by Ark. Code Ann. § 11-9-102 (5)(B)(iii). Therefore, her alleged injury cannot be considered a "compensable injury" within the meaning of the Act.

█ █ A "compensable injury" is defined as "[a]n accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death." Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 1999). "Compensable injury," however, does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed...." Ark. Code Ann. §11-9-102(4)(B)(iii)(1999). Last week, this court handed down a decision in *Matlock v. Arkansas Blue*

*Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001), that sets forth a list of factors to be considered when determining whether an employee is engaged in employment services. Because the Commission did not have the *Matlock* decision at its disposal when deciding whether appellant was performing employment services, we remand this case so that, after considering the factors listed in *Matlock,* the Commission may reconsider its holding that appellant was not engaged in employment services.

Reversed and remanded.

STROUD, C.J. and HART, BIRD, CRABTREE and BAKER, JJ., agree.

PITTMAN, JENNINGS, and ROBBINS, JJ., dissent.

JOHN MAUZY PITTMAN, Judge, dissenting. A cardinal rule of statutory construction is to give effect to the intent of the legislature. To do so we first look at the plain language of the statute and, giving the words their plain and ordinary meaning, construe the statute just as it reads. *Flowers v. Norman Oaks Construction,* 68 Ark. App. 239, 6 S.W.3d 118 (1999). If the language of the statute is not ambiguous and plainly states the intent of the legislature, then we will look no further. *Id.*

Act 796 of 1993 made sweeping changes to the Arkansas workers' compensation law. In so doing, the legislature, with crystalline clarity, expressed its intent to narrow the remedy provided by existing law. The legislature declared that:

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state. The Seventy-Ninth General Assembly intends to restate that the major and controlling purpose of workers' compensation is to pay timely temporary and permanent disability benefits to all legitimately injured workers that suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force. When, and if, the workers' compensation statutes of this state need to be changed, the General Assembly acknowledges its responsibility to do so. It is the specific intent of the Seventy-Ninth

General Assembly to repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act. In the future, if such things as the statute of limitations, the standard of review by the Workers' Compensation Commission or courts, the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.

Ark. Code Ann. § 11-9-1001 (Repl. 1996). The legislature also changed the law so as to require the Commission and the courts to construe the Act "strictly," Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996), rather than "liberally in accordance with the chapter's remedial purposes" as was the law prior to the 1993 amendment. *Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996), *aff'd,* 328 Ark. 381, 944 S.W.2d 524 (1997).

Prior to Act 796 of 1993, Arkansas courts had adopted the "personal-comfort doctrine," which provided that employees engaged in acts that minister to personal comfort, such as eating, drinking, sleeping, smoking, or using restroom facilities, do not thereby leave the course of employment so long as they remain within the time and space limits of their employment. *See Lytle v. Arkansas Trucking Services*, 54 Ark. App. 73, 923 S.W.2d 292 (1996). The effect of this doctrine was to render compensable injuries sustained by employees while engaged in these incidental activities. However, Act 796 of 1993 included a new provision that expressly excluded from the definition of "compensable injury" any injury received by an employee at a time when employment services are not being performed. Ark. Code Ann. § 11-9-102(4)(B)(iii) (Supp. 1999). In light of the simultaneous declaration of legislative intent and provision for strict construction of the Act, the inescapable conclusion is that the legislature thereby sought to "hold for naught all prior opinions or decisions" contrary to this provision, including those opinions whereby the personal-comfort doctrine was judicially established and developed.

The case on which the majority opinion turns, *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001), states that the express exclusion from the definition of "compensable injury" of any injury received by an employee at a time when employment services are not being performed simply

"reflects the broader requirement that an accident must occur in the course of employment to be compensable." I emphatically disagree. The addition of the employment-services requirement does not merely mirror the preexisting requirement that an injury must be incurred in the course of one's employment to be compensable. Instead, it refines and restricts the definition of "course of employment" to eliminate all activities (such as those ministering to personal comfort) that do not constitute the performance of employment services.

Although the *Matlock* opinion correctly states that the term "employment services" was not defined by the Act, it does not construe the statute just as it reads giving the words their plain and ordinary meaning, *see Flowers v. Norman Oaks Construction, supra,* but instead engages in an arcane discussion of general principles and subsequent case law to arrive at the conclusion that an employee who is on a restroom break is performing employment services within the meaning of the Act. I submit that *Matlock,* and many of the cases cited therein, are nothing more than poorly disguised exercises in the sort of judicial liberalization that the Act expressly condemns and prohibits.

In so saying, I do not mean to imply that I believe that the changes to the Workers' Compensation Law wrought by Act 796 of 1993 are wise, just, or humane. To the contrary, I believe that the revisions embodied in the Act are generally ill-advised and, in some instances, draconian. But the personal thoughts of judges regarding the wisdom of legislation are of no consequence when it comes to deciding what that legislation means. As Chief Justice John Marshall wrote, judicial power is never exercised for the purpose of giving effect to the will of the judge, but instead is always exercised for the purpose of giving effect to the will of the legislature — or, in other words, to the will of the law. *Osborn v. Bank of United States,* 9 Wheat. 738 (1824).

I respectfully dissent.

JENNINGS, J., joins in this opinion.

JOHN B. ROBBINS, Judge, dissenting. I dissent for the same reasons expressed in my dissent in *Matlock v. Arkansas Blue Cross Blue Shield,* 74 Ark. App. 322, 49 S.W.3d 126 (2001).

JENNINGS, J., joins in this opinion.