2013 Ark. App. 65

**LVL, INC. and Triangle Insurance Company, Appellants**

v.

**Donald RAGSDALE, Appellee.**

**No. CA 12–607.**

Court of Appeals of Arkansas.

Feb. 6, 2013.

Roberts Law Firm, P.A., by: Andrew M. Ivey, and Jennifer Wells, for appellants.

Orr Willhite, PLC, Jonesboro, by: M. Scott Willhite, for appellee.

BRANDON J. HARRISON, Judge.

This workers' compensation appeal concerns a bathroom break, a vehicle-safety inspection, and the credibility of the employee who said he was on his way to perform both when he was injured on the job. The employee, Donald Ragsdale, was hauling mail in an eighteen-wheeler on U.S. Highway 67 for his employer, LVL, Inc., when he was injured during a roadway accident. LVL appeals the Workers' Compensation Commission's decision to award benefits to Ragsdale. LVL disputes the credibility of some particular testimony that Ragsdale provided to the administrative law judge; LVL also says that, for various reasons, Ragsdale was not performing employment services that advanced its interests when he was injured. We affirm the Commission's split decision that upheld the law judge's decision to award Ragsdale medical expenses, temporary total-disability benefits, and attorney's fees.

## Background

Ragsdale began working as a truck driver for LVL approximately seven years ago. His job was to transport U.S. mail between Newport, Arkansas and Chicago, Illinois. One day in January 2011, approximately two hours after leaving Newport, Ragsdale began slowing his truck to turn into a truck-stop complex when another eighteen-wheeler hit his truck from behind. The parties have previously stipulated that an employee-employer relationship existed when the wreck occurred. The issue is whether Ragsdale was performing "employment services," as the statutory phrase has been applied in the caselaw, when the wreck occurred so that he was entitled to seek and receive compensation for injuries to his left knee, right hip, and back.

The law judge held a hearing after the accident, and Ragsdale testified that it took him approximately eleven hours to drive from Newport to Chicago and that he normally left around 10:00 a.m. Ragsdale also said that, according to Department of Transportation regulations, he had to stop every two hours and do a walk-around to ensure the truck was safe to continue driving, and that he does stop every two hours to check the truck. He testified that he also made stops to get

food or to go to the bathroom. Ragsdale further said that, on 6 January 2011, he had left Newport around 10:00 a.m. and that, shortly after noon, an eighteen-wheeler struck him from behind as he was slowing his rig to turn into a truck-stop complex at the Missouri–Arkansas state line. The tires on the tractor-trailer Ragsdale was driving had apparently not left the roadway when the accident first occurred; but Ragsdale said that after he was hit, his truck was knocked through the ditch and came back on the ₃shoulder of the road. When asked during the administrative hearing why he slowed down to exit the highway, Ragsdale stated that he was "pulling in to get cigarettes and use the bathroom. And then I do my walk-around on the truck and trailer, and then I get back in the truck, and I go to my next location."

Ragsdale admitted that he told a Missouri State Trooper at the scene that he was only stopping to get cigarettes; Ragsdale later said that he did not think it was necessary to tell the trooper during the investigation everything he had planned to do during his stop. And Ragsdale apparently told a LVL dispatcher, soon after the wreck occurred, that he "had stopped to get cigarettes and got hit in the back-end by an 18–wheeler." He also explained that the State Line Super Center was one of his regular stops on his Newport–to–Chicago route and that he stopped there "nine out of ten times." Regarding his physical condition, Ragsdale said that, since the accident, he has not been able to work due to an injured right hip, left knee, and back.

On cross-examination during the hearing, Ragsdale clarified that he was attempting to turn into the State Line Super Center. He testified that he was going to the liquor store to get cigarettes because that store's parking-lot area was less congested with traffic than was the truck stop's, and the liquor store's lot was easier to navigate in a big truck. Ragsdale acknowledged under cross-examination that he had previously stated in his deposition that he had attempted to pull into the store to do three things: get cigarettes, use the bathroom, and check his tires.

₄The state trooper who investigated the accident testified during his deposition that Ragsdale had told him that he was slowing to turn right into the liquor store parking lot to buy cigarettes. Ragsdale agreed under cross-examination that he only told the trooper that he "was stopping to get cigarettes" when the accident occurred. On re-direct, however, Ragsdale stated that during the anticipated stop he intended to do what he always did at this truck stop: use the bathroom, buy cigarettes, and check the truck's tires and lug nuts.

### The Commission's Decision

The law judge issued an opinion, finding that, when the wreck occurred, Ragsdale was performing employment services as he slowed to turn off the road to take a restroom break and perform a safety check. The law judge then determined that Ragsdale had proven that he sustained a compensable injury and ordered LVL to pay medical expenses, temporary total-disability benefits, and attorney's fees. Here is an excerpt from that opinion

This case turns on the credibility of the witness. I have observed the claimant on two different occasions and find him to be credible. He stated he did not understand the importance of listing everything he planned to do while he took a break and it is reasonable to take a restroom break after two hours of driving. This location was a place he routinely stopped to perform a safety check since it was required every two hours, and since it was a liquor store, he want-

ed to make sure the trooper knew he was not buying alcohol, but cigarettes.

LVL appealed to the Commission, which affirmed the law judge's decision to award benefits. To LVL's argument that Ragsdale was not performing employment services because he was stopping to get cigarettes, the Commission answered (with emphasis) that

> the accident occurred while the claimant was still on U.S. 67 transporting mail from Newport to Chicago.... The Commission is bound to examine the activity the claimant was engaged in *at the time of the accident* in determining whether or not he was performing employment services. [internal citation omitted].

> The evidence in the present matter demonstrates that the claimant was performing employment services at the time of the motor vehicle accident, which occurred on January 6, 2011. The claimant was directly carrying out the employer's purpose, i.e., transporting United States mail, at the time of the accident. Even if the accident did occur while the claimant was turning his vehicle into the driveway owned by State Line Liquor, the claimant testified, "I was pulling in to get cigarettes and use the bathroom." Although the claimant apparently told Officer Dye that he only intended to purchase cigarettes, reasonable minds could find that the claimant was also stopping to use restroom facilities at a point in the 11–hour drive from Newport to Chicago.

The Commission affirmed the law judge's decision to award benefits. One commissioner dissented from the majority opinion, finding that Ragsdale was not credible and that his post-accident testimony explaining why he intended to pull into the store was given "for the sole purpose of obtaining workers' compensation benefits" and that

Ragsdale's "purpose in stopping that morning was purely personal in nature."

### Why the Commission's Decision is Affirmed

LVL filed a timely notice of appeal to this court from the Commission's decision. So we must now decide whether Ragsdale is entitled to benefits and provide supporting reasons to our conclusion. Our review power in this case is, however, limited given the applicable standard of review.

This Court views the evidence—and all reasonable inferences arising from it—in a light most favorable to the Commission's decision. We must affirm its decision when it is supported by substantial evidence. *Honeysuckle v. Curtis H. Stout, Inc.*, 2010 Ark. 328, at 5, 368 S.W.3d 64, 68. Substantial evidence is proof of the type and amount that reasonable minds could accept as being adequate to support the challenged conclusion. It does not matter, for appellate-review purposes, whether this court might have reached a different conclusion. To reverse, we must become convinced that fair-minded persons, with the same facts before them, could not have reasonably reached the Commission's conclusions. *Id.* The highest legal hurdle for LVL is that questions concerning the credibility of witnesses and the weight to be given to their testimony are within the Commission's exclusive province. Only the Commission may reconcile conflicting evidence and sift fact from fiction. *Raulston v. Waste Management Inc.*, 2012 Ark. App. 272, at 7, 411 S.W.3d 711, 715 ("Matters of credibility are exclusively within the Commission's domain[.]"). Consequently, the Commission was free to believe Ragsdale's testimony or not.

Here, LVL contends that the Commission's determination that Ragsdale was performing employment services when he was injured is flawed and otherwise

inadequate to meet the substantial-evidence threshold. When reviewing whether an employee was performing employment services when an injury occurred, we ask this multi-faceted question: did the injury happen "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly[?]" *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 376–77, 284 S.W.3d 57, 61 (2008). This fact-bound question was for the Commission to decide. Given the material facts in this case, we hold that substantial evidence supports the Commission's conclusion that Ragsdale's injury occurred within the time and space boundaries of his employment and that he was directly or indirectly serving LVL's business interests.

On appeal, LVL argues that "[t]he Full Commission mistakenly relied on a factors based test (as outlined in *Matlock* and its progeny) that has not been used in Arkansas since 2002." We disagree. In fact, the Commission's majority opinion cited *Collins v. Excel Specialty Products*, 347 Ark. 811, 69 S.W.3d 14 (2002) where our supreme court expressly declined to adopt the factors we had applied in *Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark.App. 322, 49 S.W.3d 126 (2001), and admonished that "[t]o automatically accept a personal-comfort activity as providing employment services would impermissibly broaden the requirements of Act 796." *Collins*, 347 Ark. at 818, 69 S.W.3d at 19. The Commission properly identified the right vein of caselaw, stated the governing legal questions, and applied them to the facts.

LVL further argues that Ragsdale's testimony on why he was going to turn into the truck-stop area was inconsistent and not credible. LVL contends that Ragsdale originally told the on-scene trooper that he was stopping for cigarettes, not that he was seeking to use a bathroom or safety check his truck. It was only after hiring an attorney, says LVL, that Ragsdale changed his story. LVL also asserts that Ragsdale's original story—that he was stopping for cigarettes—cannot support an award of benefits under Arkansas law. Ragsdale counters that when the wreck occurred he was actively transporting mail from Newport to Chicago, just as his job duties required, and that his truck had not even left the roadway when his truck was struck from behind. He also notes that both the law judge and a majority of the Commission believed him when he said that was stopping to take a bathroom break and that he often stopped at the Super Center to conduct a safety check.

To support its argument that Ragsdale was not directly or indirectly serving LVL's interests, LVL discusses many workers'-compensation cases. Many of the cases provide a helpful history of the law's development in this general area, but none address a long-haul trucker's bathroom-break and safety-check routines. The closest case is *Kinnebrew v. Little John's Truck, Inc.*, 66 Ark.App. 90, 989 S.W.2d 541 (1999), which involved a long-haul trucker and an injury that occurred when the driver slipped inside a truck stop's shower stall. We held, as LVL points out, that the Commission did not err when it found that Kinnebrew was not performing employment services when he was hurt. But *Kinnebrew's* material facts do not closely mirror this case. For a number of reasons—including that Kinnebrew was not hurt while in his truck and traveling on the road—this court determined that Kinnebrew's injury occurred when he was "off duty." *Id.* at 92, 989 S.W.2d at 543. Ragsdale was not off duty when he was injured. Our supreme court's holding in *Collins*—that the claimant's

"restroom break was a necessary function [that] directly or indirectly advanced [an employer's] interests"—also counsels us to affirm. *Collins,* 347 Ark. at 818, 69 S.W.3d at 19.

We come to our final point. Because we affirm the Commission's finding that, to paraphrase our supreme court, Ragsdale was performing necessary functions that directly or indirectly advanced LVL's interests, we do not need to pointedly address LVL's argument that Ragsdale's purpose for attempting to turn into the store was to buy cigarettes and that such an act was not an employment service that advanced the company's interests. Doing so would require us to resolve an issue unnecessarily given that the Commission took as fact that, at a minimum, Ragsdale was transporting mail for LVL when the accident occurred and that transporting mail for LVL was what Ragsdale did to earn a living.

### Conclusion

A majority of the Commission believed Donald Ragsdale when he said that he was stopping his eighteen-wheeler at the State Line Super Center to use the restroom and perform a vehicle-safety check as he hauled mail from Newport to Chicago. We must accept the Commission's credibility call. Further, given the caselaw on topic, we hold that Ragsdale's intended restroom break and vehicle-safety check, on this record, were employment services that directly or indirectly advanced LVL, Inc.'s interests for the purpose of determining whether Ragsdale could obtain workers' compensation benefits.

Affirmed.

WYNNE and GRUBER, JJ., agree.