Charlotte COBLE *v.* MODERN BUSINESS SYSTEMS

CA 97-1339                                              966 S.W.2d 938

Court of Appeals of Arkansas
Division I
Opinion delivered May 6, 1998

*Mashburn & Taylor*, by: *Timothy J. Myers*, for appellant.

*Ledbetter, Hornberger, Cogbill, Arnold & Harrison*, by: *James A. Arnold* and *Rebecca D. Hattabaugh*, for appellee.

JOHN B. ROBBINS, Chief Judge. Appellant Charlotte Coble sustained extensive injuries after she was involved in an automobile accident on July 11, 1994. At the time she was employed by

appellee Modern Business Systems, and she later filed for workers' compensation benefits, contending that the accident was work-related. The administrative law judge denied benefits, finding that Ms. Coble failed to prove by a preponderance of the evidence that she suffered a compensable injury while employed by the appellee. The Workers' Compensation Commission affirmed and adopted the decision of the ALJ, and Ms. Coble now appeals.

For reversal, Ms. Coble raises two arguments. First, she contends that the Commission erred in concluding that the "traveling salesman" exception to the "going-and-coming" rule no longer applies under Act 796 of 1993. In addition, Ms. Coble submits that the Commission erred in finding that her injuries did not arise out of and in the scope and course of her employment. We find no error and affirm.

When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if supported by substantial evidence. *Welch's Laundry & Cleaners v. Clark*, 38 Ark. App. 223, 832 S.W.2d 283 (1992). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *City of Fort Smith v. Brooks*, 40 Ark. App. 120, 842 S.W.2d 463 (1992). A decision by the Workers' Compensation Commission should not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Silvicraft, Inc. v. Lambert*, 10 Ark. App. 28, 661 S.W.2d 403 (1983).

At the hearing before the Commission, Ms. Coble testified on her own behalf. She stated that she began working for Modern Business Systems in March 1992 when she was hired as branch administrator for the office in Springdale, Arkansas. In January 1994, she was promoted to corporate trainer, and this job required her to travel to other branch locations throughout the company. She was also assigned to manage three other offices. One of these was in Fort Smith, Arkansas, and the others were located in southwest Missouri. Ms. Coble testified that, when she was required to

travel, the company paid for her airfare, hotel accommodations, rental car, and meals.

On July 11, 1994, Ms. Coble was in Peoria, Illinois, for the purpose of training a new administrator. She arrived at the branch office at about 8:00 a.m. and met the trainee, who was to meet with the head of the benefits department, Dwalla Tuinstra, before meeting with Ms. Coble. According to Ms. Coble, the trainee was upset when she came out of her meeting with Ms. Tuinstra, and said she needed a break. Ms. Coble stated that, although "we had a lot to cover," the trainee was permitted to take an hour for lunch. At that time, Ms. Coble decided that, rather than going to lunch, she would try to find a mall so that she could buy a new pair of panty hose. She stated that, "I had about a two-and-a-half or three-inch-wide run in them that went from the top of my leg all the way down to the end of my foot," and that, "[i]t was pretty noticeable." After getting directions to a mall, Ms. Coble set out to replace the hose. However, when she arrived at the mall she realized that she would not have enough time to go in and make the purchase, so she attempted to drive back to the office. While she was trying to turn around on a highway, her vehicle was struck by a motor home, and she suffered multiple injuries, including a head injury. She eventually resumed working for the appellee, but resigned in May 1996 because she became frustrated and could not perform her job as the result of her head injury.

Ms. Coble testified that she needed to replace her hose on the day at issue because "professional appearance is very, very important." She indicated that the run in her hose made her feel uncomfortable in a professional setting, and stated that sometimes she encountered customers coming in and out of the office while she was conducting a training session. Ms. Coble acknowledged that Modern Business Systems did not have a written dress policy, but asserted that her supervisors insisted that proper dress and appearance were important. She further testified that her supervisors always expected her to wear high heels and hose while at work, and that "going without hose would not be tolerated."

Ms. Coble's immediate supervisor, Sharon Lear, testified that, while the company does not have a written dress code, the

employees are expected to dress professionally. Ms. Lear indicated that dressing professionally includes wearing panty hose and that Ms. Coble always dressed appropriately. However, as to the hose-runner that Ms. Coble detected on July 11, 1994, Ms. Lear offered the following testimony:

> The company does not have any policy, written or otherwise, about women employees developing runners in their panty hose. The problem with developing panty runners in panty hose is a fact of life for women who wear them. That sort of thing seems to happen always at the most inconvenient time. It does happen quite a bit. Modern Business Systems does not have a written or unwritten policy or expectation that their employees are to drop everything and go replace hose that develop runners as soon as it happens. It's an individual preference. It would probably depend on what the circumstances were. If you're not expecting people in and just your employees, I don't think anyone would consider changing their hose. Some people wouldn't anyway, but it's never been an issue that we've asked anyone to go home and change that I'm aware of.
>
> . . . .
>
> I would not require or have requested that she go out on her lunch break and replace those if I had been aware of the situation. The decision to do that was, in my opinion, entirely a personal decision by Charlotte Coble.

On appeal, Ms. Coble argues that the Commission erred in finding that the "traveling salesman" exception to the "going-and-coming" rule no longer applies under the new Act, and in finding that her injury did not arise out of and in the scope and course of her employment. However, the Commission never specifically made either of these findings. Instead, it denied benefits pursuant to Ark. Code Ann. § 11-9-102(5)(B)(iii) (Repl. 1996), which provides:

> (B) "Compensable Injury" does not include:
>
> (ii) Injury which was inflicted upon the employee at a time when employment services were not being performed, or before the employee was hired or after the employment relationship was terminated[.]

The Commission found that, at the time that the accident occurred, Ms. Coble was not performing "employment services," and denied benefits. Therefore, our review of this case will be directed toward a determination of whether this finding by the Commission is supported by substantial evidence.

In her brief, Ms. Coble cites *Arkansas Dep't of Health v. Huntley*, 12 Ark. App. 287, 675 S.W.2d 845 (1984). In that case, the claimant was told by her employer to travel from Little Rock to Harrison for the purpose of inspecting ambulances. On the following day, she was to drive to Yellville. She arrived at Harrison and, after completing her work by about 5:00 p.m., checked into a hotel. Following a nap, she went to the hotel bar to have a drink. On the way back to her hotel room, she was attacked by an unidentified assailant and suffered injuries. We affirmed the Commission's finding of compensability, and in doing so cited the "traveling salesman" exception. We noted that the nature of the claimant's employment required her to be in Harrison and to check into a hotel, and that returning to her room from the hotel bar was reasonably expectable so as to be an incident of the employment. However, this opinion was delivered prior to the enactment of Act 796 of 1993.

Ms. Coble has also cited *Olsten Kimberly Quality Care v. Petty*, 328 Ark. 381, 944 S.W.2d 524 (1997), which was decided under the provisions of the new Act. In that case, the claimant's job was to drive her own vehicle to the homes of patients and provide nursing services. While driving to the home of one such patient, she was involved in an automobile accident and suffered injuries. The Commission awarded benefits. We affirmed and review was sought to the supreme court. In affirming, the supreme court found that the claimant was engaged in "employment services," relying on the fact that her travel was an inherent and necessary incident of her required employment activity, and that her travel was an essential component of the services she provided.

In the case at bar, we find substantial evidence to support the Commission's finding that Ms. Coble was not performing "employment services" at the time of her accident, and we therefore affirm its decision that she failed to establish a compensable

injury. In *Olsten Kimberly Quality Care v. Petty, supra,* the claimant was required to drive to various homes in order to perform her job. In the instant case, there was evidence that Ms. Coble was not required to replace hosiery during the workday in the event of a run, nor was she even expected to do so. In addition, she admitted that she would not have made the trip if her trainee had not requested a lunch break; she was prepared to continue the training despite the condition of her panty hose. On her break from work, she was free to do whatever she wanted to do, and it was solely her decision to proceed to the mall. Under these circumstances, we agree that her decision to drive to the mall was personal in nature, was not a requirement or essential component of the services she provided, and did not constitute "employment services" for purposes of the new Act.

At the conclusion of her brief, Ms. Coble also suggests that public policy mandates reversal of the Commission's decision. She asserts that the representatives of the appellee started paying her medical expenses and led her to believe that future medical benefits would be provided, and that as a result the statute of limitations almost ran on her workers' compensation claim. We find no merit to this argument because, even if the appellee misled Ms. Coble in the manner that she alleges, she in fact was able to file for workers' compensation before the statute of limitations barred her claim.

Affirmed.

BIRD and ROAF, JJ., agree.