Ronald A. CAMPBELL (*Deceased*) *v.*
RANDAL TYLER FORD MERCURY, INC.

CA 99-1212                                     13 S.W.3d 916

Court of Appeals of Arkansas
Division II
Opinion delivered April 12, 2000

*Sexton & Fields, P.L.L.C.*, by: *Don Langston*, for appellant.

*Frye & Boyce, P.A.*, by: *William C. Frye*, for appellee.

MARGARET MEADS, Judge. Lorena Campbell, widow of appellant, Ronald Campbell, brought a claim for death benefits by a dependent spouse alleging that appellant died in an automobile accident which occurred while he was within the scope of his employment while performing employment services. An administrative law judge awarded benefits. The full Commission reversed the law judge and denied benefits on the finding that appellant was not performing employment services when he was traveling to work on the morning of the accident. We affirm.

Ronald Campbell, whose duties included drawing up contracts, handling financing, and doing the paperwork associated with buying a car, was appellee's financial manager. Campbell used a company car for company business, took home paperwork that needed to be done, and went to places other than the company for business after-hours. On May 18, 1998, Campbell died in a fire which occurred as a result of a one-vehicle accident on his way to work.

The evidence at the hearing before the law judge was that Campbell often brought contracts home and made telephone calls from home to arrange to show a vehicle, to get a contract signed, or to discuss "deals." He had a cellular telephone under appellee's contract, but he paid for it. The weekend prior to his death,

Campbell brought home paperwork relating to a sale to Jeremy Roberts. He worked on it over the weekend and discovered something wrong with it. On Sunday, Campbell called Roberts to let him know that the contract could not be signed that weekend, and arrangements were made to sign the contract on Monday. On the morning of the accident, Campbell left for work in his uniform, driving his company car, and taking his cellular phone and paperwork. He had the contract with him and was taking it back to appellee, but was not on any type of errand for appellee; the accident occurred on his normal route to work. Prior to the accident, Campbell telephoned appellee from the cellular phone to inform it that he would be late. The contract burned as a result of the automobile accident; a new contract was printed and was signed later in the week.

An administrative law judge found that Campbell was performing employment services when he was involved in the fatal car accident. The full Commission reversed. The Commission found that the employment-services exception to the definition of compensable injury "clearly excludes" this claim from being compensable, stating:

> In our opinion, claimant's traveling to work does not elevate claimant's activities to the level of activities which carry out the employer's purpose or advances [sic] the employer's interests. Claimant was not employed as a courier to transport documents. Claimant was a finance manager. As a finance manager, he was required to work on sales contracts. Whether he worked on these contracts at home or at the office is immaterial to this claim, as claimant was clearly not working on a sales contract at the time of his injury.

> . . . .

> Claimant was traveling to work on Monday morning when he was involved in a fatal automobile accident. He just merely happened to have a contract with him when the accident occurred. ... [W]e are not persuaded by any argument advanced that transporting the contract at this particular time to the dealership for corrections was required by his employer. ... [T]he relevant fact is that claimant was traveling to work when the accident occurred. Whether claimant had the contract in his possession at that time is irrelevant. As explained at the hearing, a duplicate contract could be created and, in fact, later was duplicated by the computer system at the dealer-

ship. Thus, it was not necessary or even required of claimant's employment to have the contract in his possession at the time the accident occurred. Claimant's primary activity as a finance manager on the particular morning did not involve driving to work as that is an activity required of all employees. Consequently, we do not find that it was a risk attributable to his employment as a finance manager. Nor do we find that claimant's employment imposed greater risks or demands on him in traveling to or from work. This case is a classic going and coming case and an accident which occurred when claimant was going to work is not compensable.

■ When reviewing a decision of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, and we affirm that decision if it is supported by substantial evidence. *Gansky v. Hi-Tech Eng'g*, 325 Ark. 163, 924 S.W.2d 790 (1996). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). The Commission's decision will be affirmed unless fair-minded persons with the same facts before them could not have arrived at the conclusion reached by the Commission. *Gansky, supra.*

■ Arkansas Code Annotated section 11-9-102(4)(A)(i) (Repl. 1999), defines compensable injury as an accidental injury causing internal or external physical harm arising out of and in the course of employment. The test for determining whether an employee was acting in the course of employment at the time of his injury requires that the injury occur within the time and space boundaries of his employment while he is carrying out the employer's purpose or advancing the employer's interests directly or indirectly. *Pettey, supra.* An employee is generally said not to be acting within the course of employment when he is traveling to and from the workplace, the rationale being that an employee is not within the course of his employment while traveling to or from his job. *Id.* Some exceptions to this rule are where the journey itself is "part of the service," such as traveling men on a business trip and employees who must travel from job site to job site. *Id.* Whether an employer requires an employee to do something has been dispositive of whether that activity constituted employment services. *See Ray v. Univ. of Arkansas*, 66 Ark. App. 177, 990 S.W.2d 558 (1999);

*Coble v. Modern Business Systems*, 62 Ark. App. 26, 966 S.W.2d 938 (1998).

Appellant argues that the Commission erred when it found that Campbell was not performing employment services at the time of his death. Appellant contends he was advancing his employer's purposes by bringing paperwork back to work and by making the cellular telephone call, and that bringing an incomplete contract back to the premises for correction and signature constitutes employment services. Appellant relies on *Pettey, supra; Ray, supra; Shults v. Pulaski County Special School Dist.*, 63 Ark. App. 171, 976 S.W.2d 399 (1998); and *Fisher v. Poole Truck Line*, 57 Ark. App. 268, 944 S.W.2d 853 (1997); in support of this argument. However, these cases are distinguishable on their facts and provide no support for the instant appeal.

In *Pettey*, appellee was employed as a nursing assistant and was required to travel to patients' homes to provide nursing services. She was injured in a one-vehicle accident while she was traveling to the home of a patient. Our supreme court held that appellee was required by the very nature of her job description to submit herself to the hazards of day-to-day travel back and forth to the homes of her patients, and as such was acting within the course of her employment at the time she was injured.

In *Ray*, a food-service worker slipped and fell in the cafeteria during one of her paid fifteen-minute breaks. Appellee required her to be available to work during her break and paid her for the time she was on break because she was required to help students. She was required to assist student diners by leaving her break to help if the need arose. This court held that appellee clearly benefitted by appellant's being in the cafeteria and available for students during her paid break, and the benefit was directly related to the job she performed and for which she was paid.

In *Shults*, appellant was employed as a building custodian. One of his duties upon arriving at work was to disarm the alarm system when he entered the building. He was injured when he tripped after entering the building and seeing that the alarm had been disarmed. Because appellant's first duty as building custodian was to check the alarm system, this court held that appellant sustained his injury at a time when employment services were being performed.

Finally, in *Fisher*, appellant was a newly hired truck driver and as such was required by his employer to take a physical, which he did. When he reported to work to receive a driving assignment on the day of the accident, he learned that his urine test was unacceptable, and he would not be allowed to drive until he retook and passed the test. He left and immediately drove to the doctor's office, retook, and passed the test. He was injured when his automobile was stuck by a tractor-trailer truck as he was returning to his place of employment with the results of the test. Although he was not ordered to bring back the results of the test, he knew that by hand-delivering the results he would receive his driving assignment. This court held Fisher was performing employment services while traveling from the employer's premises to retake the test and was injured on the return trip.

To the contrary, in the instant case, Campbell was not doing something required by his employer, as in *Ray, Shults*, or *Fisher*; nor was he required by the very nature of his job description to carry contracts back and forth in his vehicle as in *Pettey*. Rather, appellant was injured while driving his company car on the way to work. Although he had some contracts in the car which he had worked on during the weekend, neither working on these contracts over the weekend nor transporting them in his car was something he was required to do as part of his job or even something that appellee had asked him to do. Appellant's journey itself was not part of the service, and appellant was not required, as part of his job, to bring with him his own vehicle for use during his work day. In regard to the cellular telephone call Campbell made to his employer to inform it that he would be late, we view this as a common courtesy to inform someone that you are running late, and it is not enough to bring appellant's actions within the purview of "performing employment services" at the time of his death. We cannot hold that the Commission erred in finding that Campbell was not performing employment services at the time of his untimely death.

Affirmed.

ROAF, J., and HAYS, S.J., agree.