Ricky WALLACE *v.* WEST FRASER SOUTH, INC., and American Manufacturers Mutual Insurance Company

05-254                                                    225 S.W.3d 361

Supreme Court of Arkansas
Opinion delivered January 26, 2006

*Billy J. Hubbell*, for appellant.

*Rieves, Rubens & Mayton*, by: *David C. Jones*, for appellees.

Tom Glaze, Justice. Appellee West Fraser South, Inc., petitioned for review from a 5-4 decision by the court of appeals reversing the decision of the Workers' Compensation Commission, alleging that the court of appeals' opinion in this case conflicted with prior holdings of this court. We affirm the court of appeals and reverse the Commission.

Appellant Ricky Wallace was injured at work on February 5, 2002, and he sought workers' compensation benefits. After a hearing, the administrative law judge (ALJ) determined that Wallace had not proven that he was performing employment-related services at the time of his injury. In a 2-1 decision, the Workers' Compensation Commission agreed with the ALJ, affirming the denial of benefits on September 4, 2003. Wallace appealed the Commission's decision to the court of appeals, which reversed the Commission. *Wallace v. West Fraser South*, 90 Ark. App. 38, 203 S.W.3d 646 (2005). West Fraser then filed a petition for review, which this court granted. Upon a petition for review, we consider a case as though it has been originally filed in this Court. *Edens v. Superior Marble & Glass*, 346 Ark. 487, 58 S.W.3d 369 (2001); *Estridge v. Waste Management*, 343 Ark. 276, 33 S.W.3d 167 (2000); *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999).

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. *Hapney v. Rheem Manufacturing Co.*, 341 Ark. 548, 26 S.W.3d 771 (2000); *Burlington Indus. v. Pickett*, 336 Ark. 515, 988 S.W.2d 3 (1999). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Williams v. Prostaff Temps.*, 336 Ark. 510, 988 S.W.2d 1 (1999). The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999). Where the Commission denies a claim because of the claimant's failure to meet his burden of proof,

the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Davis v. Old Dominion Freight Line, Inc.,* 341 Ark. 751, 20 S.W.3d 326 (2000); *Johnson v. American Pulpwood Co.,* 38 Ark. App. 6, 826 S.W.2d 827 (1992).

Wallace was employed by West Fraser South as a forklift operator at a sawmill in Huttig. Wallace's job duties included picking up lumber off of the yard and placing it on a conveyor chain for the "green stacker" to stack. On February 5, 2002, Wallace was crossing a board that had been placed over a muddy ditch so that employees could "walk across there and go to the bathroom . . . without having to wade mud." The ends of the board had been set on concrete, but as Wallace was walking across it, the board slid off of the concrete; Wallace fell and twisted his knee.

In a recorded interview taken on February 13, 2002, by claims adjuster Donna French, Wallace stated that he fell as he was "coming off a break." Wallace explained that he was walking across a board when the board slipped in the mud, causing Wallace to fall and twist his knee. French asked whether Wallace was on a break or was going to get on the forklift, and Wallace stated that he had been talking to a co-worker, and was walking back to his work area after a break to get back on the forklift. Wallace further told French that, although he had not actually gotten back to his work site, he was within ten feet of it when he fell.

At the hearing before the ALJ, Wallace's account was somewhat different. Wallace testified that his injury occurred at 3:05, and he asserted that it was not true that he was coming back off of a break, because his break is from 2:30 to 2:45 every day. He stated that he was not required to clock out when he went on break. Wallace said that he was getting ready to shut the "green stacker" down when the machine broke down. Wallace stepped off of the forklift to see how long it was going to be down, so he could find out if he would have enough time to refuel the forklift and have it serviced and ready before the next shift. The stacker operator said that the machine had been fixed, so Wallace headed back to his forklift. It was at this time that he slipped and fell. Wallace further stated that his break is always from 2:30 to 2:45, and if he does not get back to work at 2:45, he gets "written up." He described the break room as being about one hundred yards away from where he operates his forklift.

The Commission, adopting the opinion of the ALJ, found that Wallace's recorded statement to French was more credible than the testimony he gave at the hearing. The Commission found that the recorded statement was given only a week after the incident, and at that time, Wallace said that he was coming off of a break when he fell. The Commission's order denying benefits concluded that Wallace failed to prove by a preponderance of the evidence that he was performing employment related services or that he was engaged in the primary activity that he was hired to perform when he was returning from his break when he fell.

In doing so, the Commission discredited the testimony Wallace gave at the hearing that his break had ended at 2:45 and that he injured himself at 3:05. On appeal, Wallace argues strenuously that the Commission's factual conclusions were erroneous. However, it is well settled that the credibility of witnesses is a matter completely within the province of the Commission. *Ester v. National Home Ctrs., Inc.*, 335 Ark. 356, 981 S.W.2d 91 (1998); *Benton Serv. Ctr. v. Pinegar*, 269 Ark. 768, 601 S.W.2d 227 (1980); *see also Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998). The Commission is not bound to accept the testimony of any witness, even if uncontradicted. *Ester, supra*. Further, once the Commission has made its decision on issues of credibility, the appellate court is bound by that decision. *See Emerson Electric v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001); *Ford v. Chemipulp Process, Inc.*, 63 Ark. App. 260, 977 S.W.2d 5 (1998). Accordingly, this court must accept the Commission's determination that Wallace's injury occurred as he was "returning from his break."

The critical issue in this case is whether Wallace was performing "employment services" at the time of his injury. As this court noted in *Pifer v. Single Source Transportation*, 347 Ark. 851, 69 S.W.3d 1 (2002), Act 796 of 1993 made significant changes in the workers' compensation statutes and in the way workers' compensation claims are to be resolved. *Pifer*, 347 Ark. at 856 (citing *White v. Georgia-Pacific Corp.*, 339 Ark. 474, 6 S.W.3d 98 (1999). Claims arising from injuries occurring before the effective date of Act 796 (July 1, 1993) were evaluated under a liberal approach. *See Eddington v. City Electric Co.*, 237 Ark. 804, 376 S.W.2d 550 (1964); Ark. Stat. Ann. § 81-1325(b)(4) (Supp. 1979). However, Act 796 requires us to strictly construe the workers' compensation statutes. Ark. Code. Ann. § 11-9-704(c)(3); *White v. Georgia-Pacific Corp., supra*. The doctrine of strict construction directs us to use the plain meaning of the statutory language. *Pifer, supra*.

Act 796 defines a compensable injury as "[a]n accidental injury . . . arising out of and in the course of employment. . . ." Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2002). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed. . . ." Ark. Code Ann. § 11-9-102(4)(B)(iii) (emphasis added). However, Act 796 does not define the phrase "in the course of employment" or the term "employment services." *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). It, therefore, falls to this court to define these terms in a manner that neither broadens nor narrows the scope of Act 796 of 1993. *Pifer*, 347 Ark. at 856.

Since 1993, this court has held several times that an employee is performing "employment services" when he or she "is doing something that is generally required by his or her employer. . . ." *Pifer*, 347 Ark. at 857; *Collins v. Excel Specialty Prods.*, 347 Ark. 811, 816, 69 S.W.3d 14, 18 (2002); *White v. Georgia-Pacific Corp.*, 339 Ark. at 478, 6 S.W.3d at 100; *Olsten Kimberly*, 328 Ark. 381, 384, 944 S.W.2d 524, 526 (1997). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment." *Pifer, supra; White v. Georgia-Pacific Corp., supra; Olsten Kimberley, supra.* The test is whether the injury occurred "within the time and space boundaries of the employment, when the employee [was] carrying out the employer's purpose or advancing the employer's interest directly or indirectly." *White v. Georgia-Pacific Corp.*, 339 Ark. at 478, 6 S.W.3d at 100. *See also Wal-Mart Stores, Inc. v. King*, 93 Ark. App. 101, 216 S.W.3d 648 (2005); *Arkansas Methodist Hospital v. Hampton*, 90 Ark. App. 288, 205 S.W.3d 848 (2005). The critical issue is whether the interests of the employer were being directly or indirectly advanced by the employee at the time of the injury. *Collins*, 347 Ark. at 818; *see also Matlock v. Arkansas Blue Cross Blue Shield*, 74 Ark. App. 322, 49 S.W.3d 126 (2001).

Clearly, Wallace's injuries occurred within the "time and space boundaries of his employment." The question is whether he was "carrying out the employer's purpose or advancing the employer's interest directly or indirectly." The Commission found that, because Wallace was "on a break" at the time he twisted his knee, he was not performing employment services when he fell. We disagree.

In *Collins v. Excel Specialty Products, supra,* this court held that an employee's injury, suffered while taking a restroom break, was compensable, because the "restroom break was a necessary function and directly or indirectly advanced the interests of the employer." *Collins,* 347 Ark. at 819. Our court reached the same decision in *Pifer v. Single Source Transportation, supra.* In both of these cases, this court held that injuries occurring while an employee is on the way to or from toilet facilities arise within the course of employment. Both *Pifer* and *Collins* cited the court of appeals' decision in *Matlock v. Arkansas Blue Cross Blue Shield, supra,* as follows:

> Employers provide restroom facilities for the benefit of their customers, to be sure. But they also provide those facilities to accommodate their workers so as to avoid the work interruptions and delays that would certainly occur if workers were forced to leave the employment premises in order to find a public restroom at some distance from the work, their supervisors, and customers.

*Pifer,* 347 Ark. at 858; *Collins,* 347 Ark. at 818 (quoting *Matlock,* 74 Ark. App. at 341-42). The court in *Matlock* further noted that "[t]he strict construction requirement of Act 796 does not . . . require that we review workers' compensation claims and appeals as simply a matter of determining whether the worker was performing a job task when the accident occurred." *Matlock,* 74 Ark. App. at 342.

In its brief, West Fraser argues, among other things, that the instant case is distinguishable from *Pifer, Collins,* and *Matlock* because there was no evidence that Wallace was going to or coming back from the restroom. However, while those cases dealt specifically with injuries sustained during an employee's restroom break, they also hold that whether an employee was performing employment services within the course of employment depends on the particular facts and circumstances of each case. *Matlock,* 74 Ark. App. at 339. In addition, in at least two of these cases, the court placed specific emphasis on the fact that the employee was *returning* to work after a break. For example, in *Matlock,* the court of appeals wrote the following:

> Matlock *was manifestly advancing the employer's interest by returning to work after an authorized or permitted rest period. . . . Her conduct in returning to her desk was entirely consistent with the employer's interest in advancing the work. . . .* There is no fact that even remotely supports an inference, let alone a factual finding or conclusion of law, that appellant was violating or undermining any interest of the employer

by going to the restroom or by returning to her work station. Everything in the record before us indicates that *Matlock was engaged in conduct permitted by the employer, if not specifically authorized by the employer,* and that the employer provided restroom facilities on its premises.

*Id.* at 341 (emphasis added). Likewise, in *Pifer,* the court noted that the employee "was returning to resume the employer's work when the accident occurred that resulted in his injuries. [Pifer's] conduct in returning to his truck was entirely consistent with the employer's interest in advancing the work." *Pifer,* 347 Ark. at 859.

Other recent cases have addressed the issue of whether an employee was performing employment services during a break period. For example, in *White v. Georgia Pacific,* the employee's injuries were determined to be compensable because the employee was required to monitor his work area while he was taking a smoke break. Similarly, in *Ray v. University of Arkansas,* 66 Ark. App. 177, 990 S.W.2d 558 (1999), the court of appeals held that an employee's injury, sustained during a break, was compensable, because the employee was required to stop what she was doing and assist students if required, even during a paid break period. *Ray,* 66 Ark. App. at 181. And in *Wal-Mart Stores, Inc. v. Sands,* 80 Ark. App. 51, 91 S.W.3d 93 (2002), the court of appeals held that an employee was performing employment services when she was injured at the end of a break while she was returning her personal belongings to a locker, because her employee handbook required her to keep those personal items in a locker; because she was "doing something that was generally required by . . . her employer," she was engaged in employment services.

■ Here, the Commission accepted as true Wallace's account that he was walking back to his forklift and was ten feet away from his work site at the time he was injured. The Commission also accepted Wallace's statement that he was "coming off of a break" when the accident occurred. At the hearing before the Commission, Wallace offered uncontradicted testimony that he does not clock out when he goes on break, and that, if he does not return to work at the end of his scheduled break time, he would be written up. When asked if he had ever been called off of his break to do any work, Wallace replied that he had, and that his employer would come to the break room to get him. The break room is located about one hundred yards away from where Wallace works; his routine break consisted of getting off his forklift, walking up to

the break room, using the restroom, and walking back to work. He testified that, by the time he "make[s] that round and get[s] back down [to his work site], break is over." Wallace's employer offered no testimony or evidence to controvert these aspects of Wallace's testimony, nor did the Commission discount these facts in its conclusions.

We do not, as suggested by Wallace, adopt a bright-line rule that an employee who is on a break is *per se* performing employment services. We need not address that issue because we conclude, on the facts of this case, that Wallace was performing employment services at the time of his injury. As in *Pifer* and *Matlock*, Wallace was returning to his work area after an authorized rest period. Wallace testified that in the past, he had been asked to return to work during his break. We note the similarities to *Ray v. University of Arkansas, supra*, where the employee was required to assist students if required, even during a paid break period. In addition, Wallace remained on the clock and was not able to leave his workplace during his break. In *Wal-Mart Stores, Inc. v. King, supra*, the court of appeals held that where an employee was required to go to the employee lounge for her break and was required to assist customers during her break, if requested to do so, the employee was performing employment services. In sum, the record before us indicates that Wallace was engaged in conduct permitted by his employer, if not specifically authorized by his employer, and nothing in the record demonstrates that Wallace's actions were inconsistent with his employer's interests in advancing the work. Although West Fraser urges this court to conclude that there was substantial evidence to support the Commission's opinion, we must conclude that the Commission's decision was based on an incorrect interpretation of the law. *See Pifer*, 347 Ark. at 859. Accordingly, we reverse the Commission's decision and remand for a determination of benefits.[1]

BROWN, J., concurs.

---

[1] The concurring opinion is somewhat misleading when it lists three factors that the concurring justice would rely upon in order to decide compensability. Of course, Act 796 of 1993 requires the Commission and our court to strictly construe our workers' compensation statutes. But even applying such a strict construction, it is nonetheless very clear that (1) Wallace was injured within the time and space boundaries of his employment; (2) he was on break and on the business's property when the injury occurred; (3) he was not required to clock out when on his break; (4) he was on call while on his break, and he had been called on to return to work from his break in the past; and (5) he was not allowed to leave the

Robert L. Brown, Justice, concurring. I agree that compensability must be determined on a case-by-case basis and that a bright-line rule covering all rest breaks is not appropriate under current Arkansas law. Nevertheless, the factors that I consider pivotal for compensability exist in this case. Wallace was on his regularly scheduled paid break in mid-afternoon and on company property at the time of the injury. Moreover, he testified that he had been "called off the break to do work" in the past. I take that to mean he was on call during his break. No proof was offered by West Fraser South that Wallace was involved in any prohibited conduct when injured. These factors decide the case for me as opposed to the majority's more narrow construction that Wallace was returning to work and was ten feet from his forklift when he was injured. Tying compensability to those factors unduly restrict recovery in my judgment.

Without question, paid breaks on company property indirectly advance the employer's interests by returning refreshed workers to the job. *See Pifer v. Single Source Transp.*, 347 Ark. 851, 69 S.W.3d 1 (2002). We said as much in the bathroom-break cases. *See id.; see also Collins v. Excel Specialty Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002). Wallace testified that his company-authorized breaks were regularly scheduled to occur daily between 2:30 and 2:45 p.m. Typically, on his breaks, Wallace said he would "get off of the [fork] lift, walk up to the break room, go to the bathroom, and go back to work." He further said that in addition to going to the bathroom, he would often drink a Coke and eat a candy bar or something similar. The employer was benefitted by such breaks under these facts, especially when the employee was also on call as Wallace was.

The majority in a footnote appears to agree that the relevant factors for compensability are as I have outlined. Neither the majority nor I advocate a bright-line rule for these matters, but rather would decide cases of this kind on a case-by-case basis. The

---

premises when on break. In keeping with all the cases decided by the court or appeals and our court, we are required to reverse this case and remand this matter for a determination of damages.

Moreover, as mentioned above, we need not address a bright-line rule as suggested by Wallace. However, our ruling in this case does not prevent the court of appeals or this court from considering such a theory in an appropriate case in the future.

majority, however, unduly restricts compensability to the fact that Wallace was ten feet from his forklift when injured.

I would reverse the Workers' Compensation Commission for these reasons.