## John D. JONES *v.* XTREME PIZZA

CA 06-451                                          245 S.W.3d 670

Court of Appeals of Arkansas
Opinion delivered December 20, 2006

*Thomas W. Mickel, P.A.*, by: *Thomas W. Mickel*, for appellant.

*Bridges, Young, Matthews & Drake, PLC*, by: *R. Scott Morgan* and *Brandon C. Robinson*, for appellees.

WENDELL L. GRIFFEN, Judge. The Arkansas Workers' Compensation Commission denied benefits to appellant John D. Jones because it determined that Jones was not performing employment services when he was injured because he was driving to work. We reverse the Commission's order and remand for an award of benefits.

The facts in this case are not disputed. Jones, who lived in Jacksonville, Arkansas, was employed by appellee Xtreme Pizza as the general manager of a Domino's Pizza in Bryant, Arkansas. In addition to the usual in-house duties required to operate a pizza franchise, when necessary, Jones was also required to use his personal vehicle to leave the store and purchase food ingredients.

He was also required to attend manager meetings and off-site training seminars. The manager meetings were usually held at the home of Jones's immediate supervisor, Mr. Acklin, who lived in Conway, Arkansas. The training seminars, conducted by the franchisor, Domino's Pizza, were usually held in hotel meeting rooms. Jones was not provided mileage or travel expenses when he attended seminars or manager meetings.

Jones suffered injuries to his neck on August 20, 2003, while on his way to the pizza store in Bryant, where he was scheduled to work at 3:00 p.m. However, Jones was not merely traveling directly from his home to work. Prior to the accident, at Acklin's request, Jones attended both a corporate meeting in North Little Rock and a demonstration meeting at a Little Rock Domino's. The corporate meeting began at 8:00 a.m. or 9:00 a.m. and lasted two to three hours.

After that meeting concluded, Jones met Acklin at a gas station on Highway 10 in Little Rock because Acklin did not want to drive to the Little Rock Domino's store alone. Jones rode with Acklin to the Domino's store on Chenal Parkway; the purpose of this meeting was to demonstrate the correct way to make a new pizza that was to be marketed. This meeting lasted approximately one-and-one-half hours. Acklin then drove Jones back to his vehicle on Highway 10. Jones called one of his employees to cover for him at the store, because he would not be there by 3:00 p.m., as scheduled.

Jones then proceeded to the Bryant store. To avoid construction on Interstate 30, he took the Stagecoach Road exit, a route that he sometimes takes when he drives directly from home to work. Approximately two blocks from the pizza store, Jones's car was rear-ended as he stopped and waited for traffic to clear so he could make a left turn. Immediately thereafter, Jones telephoned Acklin and informed him of the accident. He then drove to Acklin's house in Conway, pursuant to Acklin's request, where, among other things, they discussed the wreck and issues regarding the stores. Jones reported to Acklin at that time that his upper neck was hurting; he said that Acklin knew he was going to the emergency room.

Jones did not immediately pursue a workers' compensation claim, but did seek emergency treatment and follow-up treatment for upper neck pain, shoulder pain, and headaches. He missed work from September 9, 2003, until November 10, 2003. He then returned to work and continued to work until January 16, 2004, at which time he left appellee's employ due to an unspecified problem that he had with Acklin that was unrelated to his injury. After Jones left appellee's employ, he claimed entitlement to workers' compensation benefits. The employer controverted Jones's claim, and a hearing was held before an Administrative Law Judge (ALJ).

Jones was the sole witness at the hearing. The ALJ found Jones's undisputed testimony credible and determined that he proved entitlement to benefits from September 9, 2003, through November 10, 2003, noting an objective finding of muscle spasms in Jones's medical records. The ALJ awarded benefits, concluding that Jones's activity in driving to the Bryant store following the training seminar furthered appellee's interests, and thus, constituted employment services.

The Commission reversed on the sole basis that Jones was not performing employment services at the time of the accident. The Commission reasoned:

> At the time of the injury the claimant was driving to work. Earlier in the day the claimant had attended a management meeting and a new product demonstration. The claimant was not injured during either of these activities which took place away from the claimant's store. The claimant was no longer attending managerial meetings and he was not in route [sic] to or from a new product demonstration when he had an accident. *After this meeting and demonstration, the claimant could have returned home had he not been scheduled to work that afternoon. Accordingly, we cannot find that the claimant's activities from the morning have any bearing upon the claimant's status at the time of the wreck.* In our opinion, *the claimant's morning activities of managerial meetings and new product demonstrations had ended. Had he not been scheduled to work, the claimant's work day would have ended at that time. After these meetings, the claimant's job duties and his responsibilities were not to resume until he arrived at his store in Bryant. At the time of his injury the claimant was merely driving to work like he usually did every day he was scheduled to work. At the time of the accident the claimant was not on the clock nor was he in any manner performing any activity that either directly or indirectly advanced his employer's interest other than going to work.*

(Emphasis added.) Thus, the Commission denied benefits because it concluded that Jones was not performing employment services when he was injured. The sole issue in this case is whether Jones was performing employment services at the time of the accident or whether he is precluded by the going-and-coming rule from receiving benefits because he was on his way to work.

In reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commis-

sion's findings, and we affirm if the decision is supported by substantial evidence. *Whitlach v. Southland Land & Dev.*, 84 Ark. App. 399, 141 S.W.3d 916 (2004). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Id.* When a claim is denied because the claimant has failed to show an entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Id.*

We reverse the Commission's decision and remand for an award of benefits because reasonable minds could not have reached the Commission's conclusion on the facts before us. To be compensable under workers' compensation law, an injury must arise out of and in the course of employment. Ark. Code Ann. § 11-9-102(4)(A)(i) (Supp. 2001). An injury is not compensable if it was inflicted upon an employee at a time when employment services were not being performed. *Id.* § 11-9-102(4)(B)(iii). An employee is performing "employment services" when he or she is doing something that is generally required by his or her employer. *Collins v. Excel Specialty Prods.*, 347 Ark. 811, 69 S.W.3d 14 (2002). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee was acting within "the course of employment" — whether the injury occurred within the time and space boundaries of the employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. In reaching this determination, we consider whether the employee was engaged in the primary activity that she was hired to perform or in incidental activities that are inherently necessary for the performance of the primary activity. *See Olsten Kimberly Quality Care v. Pettey*, 55 Ark. App. 343, 934 S.W.2d 956 (1996).

An employee is not generally considered to be performing employment services while merely traveling to or from the workplace; thus, the going-and-coming rule ordinarily precludes compensation for injuries received while an employee is going to or returning from work. *Moncus v. Billingsley Logging & Am. Ins. Co.*, 366 Ark. 383, 235 S.W.3d 877 (2006). The rationale for this rule is that all persons, including employees, are subject to the recognized hazards of travel to and from work in a vehicle. *Id.* However, exceptions to the going-and-coming rule exist, two of which are relevant in this case.

First, the going-and-coming rule does not preclude benefits where the journey itself is part of the employment service; that is, where the employee must travel from jobsite to jobsite, whether or not he or she is paid for that travel time. *Id.* The rationale behind this exception is that where the employee is required to travel from jobsite to jobsite, such travel is an integral part of the job itself, even if the travel is not the activity for which a claimant was primarily employed. *Id.* Second, the going-and-coming rule does not preclude benefits where the employee is injured on a special mission or errand. *See Swearengin v. Evergreen Lawns*, 85 Ark. App. 61, 145 S.W.3d 830 (2004).

In the simplest terms, the going-and-coming rule does not preclude an award of benefits here because this is not a going-and-coming case. That rule precludes benefits where the claimant is merely driving from home to work, has not yet received instructions from his employer, and where the employer is not dictating the conduct of the employee's work. *See Moncus, supra.* Here, despite the fact that Jones was on his way to his primary place of employment, he was not "merely driving to work like he usually did every day he was scheduled to work" as the Commission found.

Rather, as a result of the special errands imposed by his employer, Jones clearly was going from one job site to the other, and thus, was required to subject himself to the hazards of driving, not from home to work, but from one job site to the next. *See Olsten, supra.* Thus, it cannot be said that Jones was merely driving from his home to work as usual, that he had not received instructions from his employer before his workday began, or that his employer was not dictating the course of his work. Instead, Jones was where he was when the accident happened due to his employment-related activities. *See Moncus, supra* (awarding benefits where the claimant was injured in an automobile accident, noting that the employer was responsible for the claimant's location on the road at the time of the accident).

While Jones may have been injured on the same route he usually takes from home, he was in fact, late for work at the Bryant store due to that day's previous employer-mandated activities; it would require speculation to assume that he would have also been late for work and would have been in the precise location where the accident occurred had he gone from his home directly to work. Moreover, Jones's driving did not represent a deviation from his

usual employment because he was required to drive as a regular part of his employment — whether it be to pick up food for the store, to attend a meeting at his supervisor's house in Conway, or to attend other meetings as required, such as the meetings in the instant case.

■ The Commission's assertion that Jones's "morning activities" (which lasted well beyond noon) had no bearing on his status at the time of the wreck is incomprehensible given that Jones was clearly driving to his primary place of employment directly following his activities that were undisputedly mandated by his employer. Equally puzzling is the Commission's conclusion that had Jones not been scheduled to work, his work day would have ended when he returned to his vehicle. In so stating, the Commission not only relies on facts that were irrelevant because they were not present in this case, but it also seems to concede the dispositive point in this case — Jones's workday clearly *had not ended at that point* because he *was* scheduled to work immediately thereafter. In fact, he was required to telephone the Bryant store when Acklin returned him to his car after the second meeting because *his employer-mandated meetings rendered him unable to get to the Bryant store by 3:00 p.m. to begin work as scheduled.* Thus, it cannot be said that at the time of his injury, Jones was not performing any activities that directly or indirectly advanced his employer's interests, other than going to work.

The cases cited by the Commission are either not binding on this court or are distinguishable.[1] *Coble v. Modern Business Systems,* 62 Ark. App. 26, 966 S.W.2d 938 (1998) and *Harding v. City of Texarkana,* 62 Ark. App. 137, 970 S.W.2d 303 (1998), are both distinguishable because in each of those cases, the claimants were involved in deviations from their primary employment. That is not the case here, where Jones decidedly did not deviate from his primary employment by going from his other employer-mandated activities to his primary place of employment. In *Maupin v. Pulaski County Sheriff's Office,* 90 Ark. App. 1, 203 S.W.3d 668 (2005), also cited by the Commission, the claimant, a police officer, was injured while merely driving to work and had not yet begun his

---

[1] The Commission first cited two of its own opinions. While the Commission may rely on its own opinions, our appellate courts are not bound by the same; thus, the litigants and the appellate courts are better served if the Commission also relies on decisions rendered by our appellate courts.

shift. Again, that is not the case here because Jones was not merely driving to work to *begin* his shift.

The Commission also relies on *Wallace v. West Fraser South, Inc.*, 90 Ark. App. 38, 203 S.W.3d 646 (2005) *aff'd*, 365 Ark. 68, 225 S.W.3d 361 (2006), because in that case this court stated that it is the activity occurring at the time of the injury, and not the activity preceding the injury that is relevant to the question of whether an employee is performing employment services at the time of the injury. *Id.* The *Wallace* claimant was injured when he fell from a board into mud when returning from a paid, scheduled work break. He remained on the clock and was not allowed to leave the workplace during the break, and could be called back to work from his break. Thus, the *Wallace* court determined that the *Wallace* claimant was acting in a manner consistent with furthering his employer's benefits and thus, was performing employment services. *Id.*

The *Wallace* case does not stand for the proposition that *work-related* activity that immediately precedes an injury is irrelevant in determining whether a claimant was performing employment services when he was injured. Rather, the *Wallace* court determined that the *nonwork* activity (the work break) that immediately preceded the injury did not *preclude* an award of benefits. In fact, the *Wallace* case actually supports the view that the Commission's decision here was in error; like the *Wallace* claimant who was returning to work as required by his employer's schedule, Jones was performing his work related–activities pursuant to the schedule set by his employer. If anything, the instant facts are more compelling to supporting a finding of compensability than are the *Wallace* facts, because, unlike the *Wallace* claimant, there was no break in Jones's work-related activities.

More persuasive is the case of *Bell v. Tri-Lakes Services*, 76 Ark. App. 42, 61 S.W.3d 867 (2001). In that case the employee was found to be performing employment services when he was injured in an automobile accident after his employer instructed him to drive to another city to pick up tools needed for work. There, the claimant was occasionally required to travel. On the day he was injured, he had worked for several hours before being instructed to retrieve the tools, and had he completed the task and returned, would have been given the option of finishing the workday or going home. Thus, the *Tri-Lake* Court concluded that the claimant's accident in that case was compensable because it

occurred after he began his employment duties but before the work day was scheduled to end. *See also Moncus, supra.*

■ The same is true here. Jones's work day began with the first meeting, no later than 9:00 a.m., and was not scheduled to end until he finished the 3:00 p.m. shift at the Bryant store. Thus, his accident, which occurred as he was driving from the second employer-mandated meeting to the Bryant store, occurred after his work day had begun and well before his work day was scheduled to end. If the *Bell* claimant's accident was compensable there is little room to assert that Jones's accident is not compensable because unlike the *Bell* claimant, Jones did not have the option of going home when his meetings ended — rather, he was required to go from one job site to another. Accordingly, the Commission in the instant case erred in denying benefits.

Reversed and remanded for an award of benefits.

HART and BIRD, JJ., agree.