

# ARKANSAS COURT OF APPEALS

DIVISION III
**No.** CV-14-46

| | |
|---|---|
| BARBARA BLACK<br><br>APPELLANT<br><br>V.<br><br><br>FIRST STEP, INC., and RISK<br>MANAGEMENT RESOURCES<br>APPELLEES | **Opinion Delivered** May 28, 2014<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [NO. F203867]<br><br><br><br>AFFIRMED |

## KENNETH S. HIXSON, Judge

Appellant Barbara Black brought a workers' compensation claim against appellee First Step, Inc., alleging that she sustained compensable injuries in a motor-vehicle accident while working for First Step on May 2, 2012. The Workers' Compensation Commission denied compensability pursuant to its finding that Barbara was traveling to work and was not performing employment services at the time of the accident. Barbara now appeals, arguing that the Commission's decision is not supported by substantial evidence. We affirm.

The claimant has the burden of proving the compensability of her claim by a preponderance of the evidence. *Williams v. Baldor Elec. Co.*, 2014 Ark. App. 62. When the Commission denies benefits because the claimant failed to meet her burden of proof, the substantial-evidence standard of review requires that we affirm if the Commission's decision displays a substantial basis for the denial of relief. *Frances v. Gaylord Container Corp.*, 341 Ark. 527, 20 S.W.3d 280 (2000). Substantial evidence exists if reasonable minds could reach the

Commission's opinion. *Dismute v. Potlach Corp.*, 2014 Ark. App. 176. In reviewing the Commission's decision, we view the evidence and all reasonable inferences in the light most favorable to the Commission's findings. *Id.*

Barbara Black and her husband, Daniel Black, began working for First Step in January 2012 as in-home caregivers for two severely disabled brothers, Aaron Beggs and Jerry Beggs. The services provided were funded by Medicaid. Barbara and Daniel lived in Mount Ida, and the Beggs brothers lived with their parents in a rural area approximately thirty miles from there. The brothers were both confined to wheelchairs and required total care. Barbara's extensive in-house duties included preparing meals for them. However, Barbara's duties did not include grocery shopping, which was the responsibility of her clients' parents.

Although it was the parents' responsibility to provide the groceries, both Barbara and Daniel testified that at times they would provide some of the food if the parents did not have everything they needed. However, Barbara and Daniel were not reimbursed for these groceries. Barbara testified that she would cook for the boys and that after they were fed, she and her husband would share in the meals.

According to Barbara, she had been told by her clients' father to arrive at their house at 7:45 a.m. on the mornings she worked there. On May 2, 2012, Barbara and Daniel intended to arrive at the Beggses' home at that time. Daniel drove his truck, and Barbara rode as a passenger. They stopped at a gas station in Mount Ida, and Barbara went into the store and bought some groceries. Barbara testified that she had planned to use these groceries in her meal preparations for her clients that day. After leaving the gas station, approximately

2

ten miles from the station, Daniel was driving to the Beggses' house and was involved in a serious accident, causing the truck to overturn. According to the police report, the accident happened at 7:26 a.m. Barbara suffered significant injuries, including fractures to her back and neck, as a result of the accident.

Although they were not paid for their mileage or expenses for traveling to work, both Barbara and Daniel maintained that they were on the clock and being paid at the time of the traffic accident. However, this fact was disputed by the employer. Cynthia Eaton, the human resources director for First Step, testified that Barbara was not paid to drive to work and that she was not supposed to be on the clock until she entered the clients' home and started working. Case manager Lisa Honeycutt corroborated that testimony. Time sheets were introduced showing that, depending on the day, Barbara had claimed work hours from 5:00–7:00 a.m. and 6:00–7:00 a.m. However, Barbara acknowledged that she never actually worked those hours because her clients' father admonished her not to arrive for work that early. The notations on those time sheets do not indicate being paid for traveling to work, but rather for things such as bathing or shaving the clients, which Barbara undisputedly did not do during those hours. Although Barbara indicated that her employer was aware of the discrepancy between her claimed and actual working hours, her employer disagreed. Both Cynthia Eaton and Lisa Honeycutt testified that claiming unworked hours on a time sheet constituted Medicaid fraud.

In this appeal, Barbara argues that the Commission's decision denying compensability was not supported by substantial evidence because her injuries arose out of and in the course

SLIP OPINION

SLIP OPINION

of her employment, at a time when she was performing employment services. Barbara asserts that she was scheduled to work at 6:00 a.m. that morning, and that the accident occurred at 7:26 a.m. Barbara further asserts that her claim was compensable because her actions of buying and taking groceries to her clients' home was a direct benefit to her clients, her clients' parents, and to her employer. Barbara submits that, although providing groceries was not required by her job, it was necessary for the effective performance of her job, which included preparing meals.

The critical inquiry in this case is whether Barbara was performing employment services at the time of her injuries. A compensable injury is defined as "[a]n accidental injury . . . arising out of and in the course of employment[.]" Ark. Code Ann. § 11-9-102(4)(A)(i) (Repl. 2012). A compensable injury does not include an "[i]njury which was inflicted upon the employee at a time when employment services were not being performed[.]" Ark. Code Ann. § 11-9-102(4)(B)(iii). We use the same test to determine whether an employee was performing "employment services" as we do when determining whether an employee is acting within "the course of employment." *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). The test is whether the injury occurred within the time and space boundaries of employment, when the employee was carrying out the employer's purpose or advancing the employer's interest directly or indirectly. *Id*. In reaching this determination, we consider whether the employee was engaged in the primary activity that she was hired to perform or in incidental activities that are inherently necessary for the performance of the primary activity. *Jones v. Xtreme Pizza*, 97 Ark. App. 206, 245 S.W.3d 670 (2006). We have

SLIP OPINION

held that an employee is performing employment services when she is doing something that is generally required by her employer. *Id.*

An employee is not generally considered to be performing employment services while merely traveling to or from the workplace; thus, the going-and-coming rule ordinarily precludes compensation for injuries received while an employee is going to or returning from work. *Moncus v. Billingsley Logging*, 366 Ark. 383, 235 S.W.3d 877 (2006). The rationale for this rule is that all persons, including employees, are subject to the recognized hazards of travel to and from work in a vehicle. *Id.*

We hold that the Commission's decision displays a substantial basis for denying compensability pursuant to its finding that Barbara was not performing employment services at the time of the motor-vehicle accident. Although Barbara asserts that she was being paid during her travel to work, her employer provided testimony that Barbara was not compensated for her travel and that her workday did not begin until she arrived at the Beggses' home. The time sheets introduced into evidence did not reflect that Barbara was compensated for driving to work, and the employer maintained that the time sheets were fraudulent. Furthermore, the evidence clearly demonstrated that Barbara was not required to provide groceries as part of her job duties.

In *Campbell v. Randal Tyler Ford Mercury, Inc.*, 70 Ark. App. 35, 13 S.W.3d 916 (2000), the appellant had taken paperwork home and worked on it over the weekend. The appellant had the paperwork with him as he was driving to work the following Monday morning, and he was involved in a fatal automobile accident. The Commission denied compensability,

5

finding that this was a classic going-and-coming case and that appellant was not performing employment services at the time of the accident. We affirmed, noting that although the appellant had some contracts in his car that he had worked on over the weekend, neither working on these contracts over the weekend nor transporting them in his car was something he was required to do as part of his job or even something that the employer had asked him to do.

In the present case, Barbara was not required or expected by her employer to provide groceries for her clients, and she acknowledged that on the day of the accident her clients' father had not asked her to stop and purchase groceries. While, as the Commission noted, her actions in bringing food to the Beggs family may have been generous and admirable, these actions were clearly not part of her job duties. Moreover, Barbara was not grocery shopping or doing anything related to her job as a personal-care aide at the time of her injury. Barbara was merely traveling to work. Because reasonable minds could conclude that Barbara was not performing employment services when the accident occurred, we affirm the Commission's decision.

Affirmed.

PITTMAN and WOOD, JJ., agree.

*Lane, Muse, Arman & Pullen*, by: *Sherri Arman McDonough*, for appellant.

*Worley, Wood & Parrish, P.A.*, by: *Melissa Wood*, for appellees.